761 So.2d 375 (2000)
Gerard D. GRAU, M.D., and Gerard D. Grau, M.D., P.A., Appellants,
v.
Stanley B. BRANHAM, Appellee.
No. 4D99-0662.
District Court of Appeal of Florida, Fourth District.
April 26, 2000.
Rehearing Denied June 21, 2000.
*376 Jeanne Brady of Brady & Brady, P.A., Boca Raton, and Philip D. Parrish of Stephens, Lynn, Klein & McNicholas, P.A., Miami, for appellants.
Richard A. Barnett and Donald A. Tobkin of Richard A. Barnett, P.A., Hollywood, for appellee.
POLEN, J.
Gerard D. Grau, M.D. and Gerard D. Grau, M.D., P.A. (collectively "Grau") timely appeal from an adverse jury verdict in a medical malpractice action brought by Stanley B. Branham. He raises several points on appeal, including that the trial court erred in allowing Branham's counsel to impeach an independent medical witness about his drug use; that fundamental error occurred when Branham's counsel made references to Grau and Nazi Germany; and that the court erred in allowing Branham's attorney to read expert testimony from the first trial. We affirm on all points raised.

Facts
This appeal stems from the retrial between the parties. Branham accused Grau of breaching the standard of care when he operated on Branham's right leg. He also claimed that Grau did not receive his informed consent prior to the operation.
At their first trial, the jury found in favor of Branham. However, in Grau v. Branham, 626 So.2d 1059 (Fla. 4th DCA 1993), this court reversed the verdict because Branham was allowed to present the deposition testimony of two experts whose testimony was based on mid-trial examinations of Branham. These examinations were taken in contravention of several orders of the trial court regarding discovery.
At retrial, Branham's counsel, Donald A. Tobkin, asked the court to allow him to read these experts' testimony from the first trial in lieu of presenting their live testimony. Grau objected on the ground that he had not had an adequate opportunity during the first trial to cross-examine them. Branham pointed out that he disclosed *377 these experts before trial. The court, implying that Grau could have redeposed these experts during the six years that elapsed since the first trial, let him use this prior testimony.
Also at the first trial, Grau, during his case-in-chief, called Dr. William Cohen, a physician who had operated on Branham's right leg in 1977, twelve years before Grau's operation. Dr. Cohen testified that the prior operation stemmed from Branham's complaints of pain, and not for cosmetic reasons, as Branham claimed. At retrial, however, Branham called Dr. Cohen during his case-in-chief. He asked Dr. Cohen whether, after the prior surgery, he had to surrender his medical license; Branham was attempting to show that Dr. Cohen had a drug addiction. Grau immediately objected that the question was irrelevant and prejudicial, especially because of the twelve-year time lapse between the first surgery and the subsequent surrendering of his license.
The court initially sustained the objection but allowed Branham to ask Dr. Cohen regarding other matters[1] outside the jury's presence. During this exchange, it became known that Dr. Cohen previously testified as to his dependency in a personal injury lawsuit that he, as a plaintiff, had brought. Finding that Dr. Cohen made his dependency a matter of public record by virtue of his prior lawsuit, the court changed its decision and overruled Grau's objection. The jury then heard Dr. Cohen testify that he voluntarily surrendered his license in exchange for entering a drug addiction program in 1989, and that he suffers from a mixed chemical dependency.
Branham also called Grau as a witness. Grau testified that he showed Branham an illustration from Pernkopf's Atlas on Anatomy before obtaining his informed consent. Branham's attorney then asked Grau:
Eduardo Pernkopf did his work between the years of 1934 and 1945 on Nazi concentration camp victims and sliced them open to do this kind of work, is that not correct?
Grau objected that the question was "really inappropriate." The court sustained the objection. Branham's lawyer again asked him if Pernkopf completed this work "between 1934 and 1945 in Nazi occupied areas." The court sustained Grau's general objection. Thereafter, he asked Grau if a drawing of a dissection in the Atlas showed no fat on the skin. After Grau replied "yes," Branham's lawyer asked, "Well the reason there is no fat there is because [sic] that was taken of a person that was starved before the dissection was done?" Again, the court sustained Grau's general objection. Grau did not move for a mistrial nor seek a curative instruction after the court sustained his objections.
Grau also objected to various comments and argument made by Branham's counsel throughout trial. For example, Grau objected, albeit generally, when the attorney accused him of causing his professional corporation to fold during the pendency of the litigation; stealing Branham's records from Dr. Cohen; and performing a "botched" surgery. He also objected when asked why he would not let Branham inspect his medical library before trial, and when accused of being greedy. Grau's general objections to all of the above comments and questions were sustained.
Overall, both sides presented expert and other conflicting testimony. The jury returned a verdict in Branham's favor and awarded him $1.8 million. Following the denial of his post-trial motions, Grau appealed.

Dr. Cohen's impeachment
Grau first argues that Branham should not have been allowed to ask Dr. Cohen about his drug addiction in front of *378 the jury. He maintains the evidence was irrelevant and unduly prejudicial. Branham contends that the testimony was relevant to impeach Dr. Cohen's testimony that the prior surgery was not for cosmetic reasons, especially since Branham claimed it was. He argues evidence that Dr. Cohen was addicted to narcotics at the time was relevant to, and probative of, Dr. Cohen's ability to determine whether the surgery was necessary.
As a general rule, relevant evidence is that which tends to prove or disprove a material fact. § 90.401, Fla. Stat. (1997). All relevant evidence is admissible unless its probative value is substantially outweighed by the danger of unfair prejudice, or unless otherwise excluded by law. §§ 90.402, 90.403, Fla. Stat. (1997). Overall, broad discretion rests with the trial court in matters relating to the admissibility of relevant evidence, and that ruling will not be overturned absent a clear abuse of discretion. Trees By and Through Trees v. K-Mart Corp., 467 So.2d 401, 403 (Fla. 4th DCA), rev. denied, 479 So.2d 119 (Fla.1985).
The trial court found that the evidence regarding Dr. Cohen's drug abuse was more prejudicial than probative. It decided to admit it only because Dr. Cohen testified as to his problems and surrender of his license in a personal injury lawsuit. The court reasoned that Dr. Cohen's drug problems were a matter of public record.
We disagree with this reasoning. Once the court determined that the evidence was unduly prejudicial, its decision to then admit same was an abuse of discretion. Nevertheless, the evidence pertained only to a collateral matter and, under a harmless error analysis, we, therefore, must affirm.

Nazi Comments
Grau then argues that the repeated statements made by Branham's trial counsel, that the textbook Grau showed Branham before surgery was used by the Nazis, warrant a new trial. Branham argues that Grau waived this issue by not seeking a mistrial below. Generally, when a court sustains a party's objection, that party must seek a curative instruction and/or move for a mistrial to preserve appellate review of that objection. Ed Ricke and Sons, Inc. v. Green By and Through Swan, 468 So.2d 908, 910 (Fla. 1985). The exception to this rule is where the error is fundamental. Id. Fundamental errors, i.e., errors which go to the heart of a trial and vitiate its fairness, may be raised for the first time on appeal. Murphy v. International Robotics Sys., Inc., 710 So.2d 587, 590 (Fla. 4th DCA), rev. granted, 722 So.2d 193 (Fla.1998). Fundamental error occurs where the error is
so extreme that it could not be corrected by an instruction if an objection had been lodged, and that it so damaged the fairness of the trial that the public's interest in our system of justice justifies a new trial....
Id. (citation omitted).
Nevertheless, and as Murphy holds, our court has all but closed the door on fundamental error in civil trials. Id. In this case, although we find Mr. Tobkin's comments to have been highly inflammatory, we cannot conclude that the court abused its discretion in denying Grau a new trial. Rather, our review of the record reflects that Grau's attorney made a tactical decision in not requesting a curative instruction and not moving for a mistrial when the above comments were made. Instead, he waited until after the adverse jury verdict was rendered before moving for a new trial. The trial court was in a much better vantage point than we are in determining whether the comments vitiated the fairness of the trial and, as such, we must affirm.

Testimony from the first trial
Grau alternatively argues that reversal is required because the court allowed Branham to read the 1992 deposition testimony from his experts, the same *379 testimony that this court in Grau held was improperly admitted at his first trial. We disagree. After this court reversed the final judgment in the first trial and remanded the case for a new trial, Grau had six years to depose these experts. That he chose not to is the fatal flaw in his argument. See Belmont v. North Broward Hosp. Dist., 727 So.2d 992 (Fla. 4th DCA), rev. denied, 740 So.2d 528 (Fla.1999).
AFFIRMED.
FARMER and HAZOURI, JJ., concur.
NOTES
[1] Branham sought to establish that Dr. Cohen was under the influence of drugs when he wrote Branham's medical reports.