899 So.2d 396 (2005)
Gerard D. GRAU, Appellant,
v.
PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, and Unum Life Insurance Company of America, Appellees.
No. 4D04-923.
District Court of Appeal of Florida, Fourth District.
March 30, 2005.
Jeanne C. Brady and Frank R. Brady of Brady & Brady, P.A., Boca Raton, and *397 William D. Tucker of Law Offices of William D. Tucker, P.A., Fort Lauderdale, for appellant.
Leonor M. Lagomasino of Greenberg & Lagomasino, P.A., Miami, for appellees.
GROSS, J.
Dr. Gerard Grau appeals from a summary final judgment entered in favor of Provident Life & Accident Insurance Company and Unum Life Insurance Company of America. Both Provident and Unum insured Grau under disability policies. Grau sued both companies for breach of contract for their failure to provide disability benefits. Applying the doctrine of judicial estoppel, the circuit court granted summary judgment in favor of the insurance companies. The basis for the estoppel was Grau's conduct during an earlier bankruptcy proceeding.
We reverse, holding that judicial estoppel was not applicable to this case.
Grau practiced plastic surgery in the Fort Lauderdale area from 1981 to August, 2000. During his career, Grau was sued for medical malpractice on a number of occasions, which resulted in at least two adverse judgments. See, e.g., Grau v. Wells, 795 So.2d 988 (Fla. 4th DCA 2001) (affirming entry of default judgment entered against Grau as a sanction based on Grau's bad faith investigation of a plaintiff's medical malpractice claim); Grau v. Branham, 761 So.2d 375 (Fla. 4th DCA 2000) (affirming a jury verdict in favor of another plaintiff in a separate medical malpractice action).
Grau filed for Chapter 11 bankruptcy in 1998 shortly after the entry of one of those judgments. Among the nonexempt assets Grau claimed on his Chapter 11 summary of schedules were the two "own occupation" disability insurance policies from Provident and Unum. Each policy provided Grau with long-term benefits if a total disability prevented him from continuing his career. Grau valued the policies at $0.00 on the summary of schedules in the bankruptcy proceeding because he was unsure whether he was "disabled" when he filed bankruptcy. Grau could have claimed these policies as entirely exempt from his creditors under section 222.18, Florida Statutes (1998), but instead classified them as nonexempt as a showing of good faith to his creditors and to avoid the cost of potential litigation over the exemption.
In August, 2000, Grau converted his Chapter 11 proceeding to a Chapter 7.[1] This conversion meant Grau took the position that the Chapter 11 reorganization had failed and he was seeking total liquidation and discharge under Chapter 7. The liquidation could have extended to all Grau's nonexempt property, including the disability policies. See Sherry Fowler Chancellor, Chapter 7 Bankruptcy Straight Liquidation for the Debtor, C7B FL-CLE 1 § I.A.1. (2003).
A section 341 meeting of creditors followed the conversion to a Chapter 7 proceeding. *398 A section 341 meeting is an informal proceeding presided over by the United States trustee, at which creditors and others have the "opportunity to examine the debtor under oath. The scope of inquiry is broad, permitting a party in interest to examine any area involving the debtor's assets or liabilities." William C. Hillman and Margaret M. Crouch, Bankruptcy Deskbook, PLIREF-BKRCY § 4:1 (2001); see also 11 U.S.C. § 341 (2000).
Among the creditors present at the section 341 meeting was attorney Donald A. Tobkin, who was plaintiff's counsel in the Branham and Wells malpractice cases. In response to questioning by Tobkin and others, Grau testified that: (1) his then current occupation was "recently disabled"; (2) he stopped practicing plastic surgery after undergoing orthopedic surgery to his left shoulder on August 18, 2000; and (3) he was "working on" filing a claim for disability benefits.
In November, 2001, Grau moved to amend his summary of schedules in the Chapter 7 proceeding to exclude the policies from liquidation by claiming them as exempt. Tobkin filed an objection, which was followed by a hearing on June 14, 2002. At the hearing, Tobkin argued (among other things) that while debtors generally have the right to freely amend their schedules during a bankruptcy proceeding, see In re Doan, 672 F.2d 831, 833 (11th Cir.1982), an exception existed under In re Talmo, 185 B.R. 637, 644-45 (Bankr. S.D.Fla.1995), where allowing a late amendment would prejudice the creditors.
During the hearing, Tobkin questioned Grau about how he had valued the policies in the bankruptcy proceeding and whether he had listed the policies as an asset in a divorce case. The bankruptcy judge recognized that the divorce proceedings were irrelevant to the issue at hand and directed Tobkin to "direct [his] questions to this case, not as to what [Grau] may be trying to do to his ex-wife." When Tobkin asked if Grau was disabled, Grau responded that he did not know. Tobkin tried to show that Grau had claimed a disability in his divorce proceeding. Ultimately, the bankruptcy judge sustained an objection to further inquiry concerning the divorce, stating that
whatever is happening, rightly or wrongly in the divorce proceeding, is irrelevant to whether [Grau is] acting in good faith here, whether he has hidden assets from you here, and whether you've suffered any prejudice here in this case.
The bankruptcy court allowed the amendment, finding that: (1) there was no prejudice to creditors; (2) Grau had not concealed assets; and (3) Grau had not acted in bad faith concerning the proposed amendment. Whether or not Grau was disabled was not necessary to the bankruptcy court's decision, and the court did not rule on that issue.
In September, 2002, Grau filed lawsuits against Provident and Unum seeking benefits under the disability policies. After motion practice, the case coalesced into breach of contract claims against the insurers. Grau took the position that he became disabled in August, 2000. Among numerous motions for summary judgment was one filed by the insurers arguing that judicial estoppel precluded Grau from claiming he was disabled. In support of this motion, the insurers offered the deposition of Grau's Chapter 7 trustee, who reported that after the August, 2000 conversion, Grau told him that "he was, in fact, not disabled." The trustee indicated that had Grau admitted to his disability, he would have pursued a claim on the policies on behalf of the estate.
Based on the bankruptcy schedules, the statements reported by the Chapter 7 trustee, some equivocal deposition testimony *399 Grau gave on March 28, 2001, and Grau's testimony at the June 14, 2002 bankruptcy court hearing, the circuit court granted the insurers' motions for summary final judgment on the ground of judicial estoppel.
The supreme court reshaped the doctrine of judicial estoppel in Blumberg v. USAA Casualty Insurance Co., 790 So.2d 1061 (Fla.2001). There, Blumberg sued an insurance company claiming that coverage existed on the theory of promissory estoppel arising from representations made by the insurer's agent, Bruner. Blumberg recovered a jury verdict of $25,000, which was not sufficient to beat the insurer's offer of judgment. Before judgment was entered, Blumberg dismissed his claim with prejudice against the insurer. Blumberg then filed suit against Bruner, claiming that Bruner was his agent, that Bruner had negligently failed to procure insurance coverage, and that no coverage existed for Blumberg's loss. Id. at 1063.
The supreme court held that the judicial estoppel doctrine barred Blumberg's suit against Bruner, writing that Blumberg was "attempting `to make a mockery out of justice' by asserting inconsistent positions in the [insurance company] suit (where he claimed that coverage existed and prevailed) and the [agent] suit (where he claimed that coverage did not exist)." Id. at 1066.
The supreme court quoted from Chase & Co. v. Little, 116 Fla. 667, 156 So. 609, 610 (1934), the court's most extensive discussion of the judicial estoppel doctrine:
The rule applicable to judicial estoppel is stated in 21 C.J. 1228 et seq., as follows:
A claim made or position taken in a former action or judicial proceeding will, in general, estop the party to make an inconsistent claim or to take a conflicting position in a subsequent action or judicial proceeding to the prejudice of the adverse party.
In order to work an estoppel, the position assumed in the former trial must have been successfully maintained. In proceedings terminating in a judgment, the positions must be clearly inconsistent, the parties must be the same and the same questions must be involved. So, the party claiming the estoppel must have been misled and have changed his position; and an estoppel is not raised by conduct of one party to a suit, unless by reason thereof the other party has been so placed as to make it to act in reliance upon it unjust to him to allow that first party to subsequently change his position. There can be no estoppel where both parties are equally in possession of all the facts pertaining to the matter relied on as an estoppel; where the conduct relied on to create the estoppel was caused by the act of the party claiming the estoppel, or where the positions taken involved solely a question of law.
Blumberg, 790 So.2d at 1066.
Applying the judicial estoppel doctrine in Blumberg, the supreme court broadened the rule articulated in Chase in three ways.
First, the supreme court recognized an exception to the general rule that there be mutuality of parties between an earlier proceeding and the later one in which judicial estoppel is applied; the court held that mutuality of the parties is not required where "special fairness and policy considerations" compel application of the doctrine. Id. at 1067.
Second, Blumberg appears to have dispensed with the Chase & Co. requirement that the "party claiming the estoppel must have been misled and have changed his position" by the other party's conduct in the earlier suit. The agent in Blumberg *400 who successfully asserted judicial estoppel was not a party to the earlier suit; the opinion does not indicate that the agent was misled, changed his position, or "acted in reliance" on Blumberg's conduct in the earlier lawsuit against the insurance company. Id. at 1066.[2]
Third, the supreme court held that the jury verdict in Blumberg satisfied the "requirement that the party [against whom the estoppel is to apply] successfully maintain the action in the first suit," even though no final judgment was entered. Id. at 1067.
Consistent with other courts, the supreme court characterized judicial estoppel as an equitable doctrine that protects the integrity of the judicial process and "prevents parties from `making a mockery of justice by inconsistent pleadings,' American National Bank v. Federal Deposit Insurance Corp., 710 F.2d 1528, 1536 (11th Cir.1983), and `playing fast and loose with the courts.' Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir.1990)." Blumberg, 790 So.2d at 1066. A situation justifying the application of judicial estoppel "is more than affront to judicial dignity. For intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." Scarano v. Cen. R. Co. of N.J., 203 F.2d 510, 513 (3rd Cir.1953); see generally Mark J. Plumer, Note, Judicial Estoppel: The Refurbishing of a Judicial Shield, 55 Geo. Wash. L.Rev. 409 (1987).
After Blumberg, the general rule of judicial estoppel in Florida appears to be this:
A claim or position successfully maintained in a former action or judicial proceeding bars a party from making a completely inconsistent claim or taking a clearly conflicting position in a subsequent action or judicial proceeding, to the prejudice[3] of the adverse party, where the parties are the same in both actions, subject to the "special fairness and policy considerations" exception to the mutuality of parties requirement.[4]
Under this general rule, judicial estoppel does not apply in this case for at least[5] two reasons.
*401 First, in the bankruptcy proceeding, Grau did not "successfully maintain" that he was not disabled. The bankruptcy court did not rule on the disability issue. To find that a party to be estopped has successfully maintained a claim or position requires that the first court adopt the claim or position, "either as a preliminary matter or as part of a final disposition." Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 n. 5 (6th Cir.1982). "Absent success in a prior proceeding, a party's later inconsistent position introduces no `risk of inconsistent court determinations,' and thus poses little threat to judicial integrity." New Hampshire v. Maine, 532 U.S. 742, 750-51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (quoting United States v. C.I.T. Constr. Inc., 944 F.2d 253, 259 (5th Cir. 1991)). At the June 14, 2002 hearing, the bankruptcy judge recognized that the disability issue was irrelevant to the issue before the courtwhether Grau should have been permitted to amend the schedules to claim the disability policies as exempt. Grau neither obtained relief nor received any benefit in bankruptcy court that was based on a finding that he was not disabled within the meaning of the policies. None of Grau's pleadings raised that issue and there was no ruling or factual finding by the bankruptcy court regarding his disability.
The requirement that a party successfully maintain a position in an earlier proceeding distinguishes judicial estoppel from a prior inconsistent statement. While Grau may have made equivocal or inconsistent statements about his disability at various times, in neither bankruptcy nor divorce court did he successfully maintain that he was not disabled for the purpose of collecting benefits under the policies. The prior statements are fodder for impeachment in a lawsuit seeking benefits under the policies. However, the doctrine of judicial estoppel does not elevate mere prior inconsistent statements into a case busting equitable defense.
The second reason that judicial estoppel does not apply is that Provident and Unum were not parties to the bankruptcy action. During the bankruptcy, Grau's valuation of the disability claims and his statements about his disability did not prejudice the insurance companies, which were not creditors in the bankruptcy. See Vining v. Segal, 773 So.2d 1243 (Fla. 3d DCA 2000) (holding a judgment debtor could not assert judicial estoppel in a proceeding to enforce the judgment, where the judgment holder failed to disclose the judgment as an asset in his bankruptcy proceeding); Ramsey v. Jonassen, 737 So.2d 1114 (Fla. 2d DCA 1999) (holding that the defendant in legal malpractice action could not use judicial estoppel to bar action where the malpractice plaintiff failed to disclose the claim in her Chapter 11 bankruptcy proceeding).
Blumberg's "special fairness and policy considerations" exception to the mutuality of parties requirement does not apply in this case. The policies underlying judicial estoppel are not implicated. Unlike Blumberg, this is not a case where a plaintiff litigated to a jury verdict on one legal theory, only to abandon that theory for a contradictory one when the verdict was not as favorable as the plaintiff desired. Grau has not used intentional self-contradiction to obtain an unfair advantage in litigation, as did the Town of Oakland in Town of Oakland v. Mercer, 851 So.2d 266 (Fla. 5th DCA 2003). There, in a forfeiture proceeding over a truck, the town took the position at an adversarial hearing that an auto dealer did not have standing to contest the forfeiture, because only one Michael Mercer had that right. Later, at a motion to dismiss the forfeiture, the town argued that Mercer did not have standing *402 to contest the forfeiture. The fifth district held that judicial estoppel prevented the town from questioning Mercer's standing to contest the forfeiture. Id. at 268-69.
Without similar "special fairness and policy considerations" in this case, we decline the insurers' invitation to apply judicial estoppel punitively against Grau, bestowing a windfall upon them.
We do not reach the other issues raised by Grau, including the statute of limitations question, because they were not ruled upon by the trial court.
Reversed.
KLEIN and MAY, JJ., concur.
NOTES
[1] Unlike Chapter 11 proceedings, which involve reorganization, Chapter 7 proceedings result in liquidation. As the Eleventh Circuit has explained:

The legal consequences of filing a Chapter 7 petition, and thus creating a Chapter 7 estate, are quite different than those attendant to a Chapter 11 petition. For instance, in a Chapter 7 case, a trustee is appointed who is charged with the duty of liquidating the assets in the debtor's bankruptcy estate with the goal of satisfying as many of the creditors' claims as possible. In a Chapter 11 case, the debtor-in-possession generally manages and administers his own bankruptcy estate, with the goal of reorganizing his affairs rather than liquidating them.
In re Alvarez, 224 F.3d 1273, 1278 n. 9 (11th Cir.2000) (citations omitted).
[2] This aspect of Blumberg calls into question the language in cases stating that a "party claiming [judicial] estoppel must have been misled and changed positions." See Furst v. Blackman, 819 So.2d 222, 226 (Fla. 4th DCA 2002); Vining v. Segal, 773 So.2d 1243 (Fla. 3d DCA 2000). One case decided after Blumberg has applied judicial estoppel when the party invoking the doctrine was not a party to the earlier proceeding and the party did not claim being misled or changing positions. See Keyes Co. v. Bankers Real Estate Partners, Inc., 881 So.2d 605 (Fla. 3d DCA 2004).
[3] The "prejudice" component of judicial estoppel occurs when "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire v. Maine, 532 U.S. 742, 751, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).
[4] A 1987 law review article recognizes that "no single formulation of the [judicial estoppel] doctrine has gained widespread acceptance." Mark J. Plumer, Note, Judicial Estoppel: The Refurbishing of a Judicial Shield, 55 Geo. Wash. L.Rev. 409, 410-11 (1987). The article proposes a definition "gleaning the most well-accepted and well-reasoned elements" of the various cases on the subject: "Judicial estoppel should bar the introduction of a party's factual assertions to a court when these assertions are inconsistent with some other version of the facts that inured to the party's benefit in some other judicial proceeding." Id. at 411 (footnotes omitted).
[5] Because we decide this case on other grounds, we do not reach the question of whether Grau's "positions" concerning his disability in the bankruptcy were totally inconsistent or clearly conflicting with his claim for disability benefits in this case.