In re Robert James HILL, Debtor.

Gordon P. Jones, Trustee, Plaintiff,

v.

MTLC Investment, Ltd., a Florida
Limited Partnership,
Defendant.

Bankruptcy No. 00–01047–3P7.
Adversary No. 00–256.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Sept. 21, 2005.

John B. MacDonald, Jacksonville, FL, for Debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

Upon the evidence presented at the trial of this Proceeding, the Court entered Findings of Fact and Conclusions of Law on September 30, 2003. Defendant ap-

pealed. The Findings of Fact and Conclusions of Law were affirmed in part and reversed in part. The District Court held it was unclear whether this Court applied the appropriate standard under Florida Statute § 726.110(1), and it remanded for a determination of whether the action relating to each transfer was filed within a year of when each individual transfer was, or reasonably could have been, discovered. Upon the evidence presented, the Court makes the following Findings of Fact and Conclusions of Law:

### *Findings of Fact*

1. Under California law, Andrew Doughty could not have conducted execution procedures or discovery in aid of execution until the order reinstating the judgment became final on November 20, 1997. D. Ex. 71, p. 26; T2 26–27, 55.[1]

2. On December 16, 1997, Doughty served Robert J. Hill with interrogatories and document requests in aid of execution designed to identify assets then and previously owned by Hill. D. Ex. 71, p. 22, ex. 17; T2 62. Responses were due within thirty (30) days of service. Hill, however, failed to serve responses for almost a year, necessitating numerous motions by Doughty and court orders compelling compliance. D. Ex. 71, p. 17–20.

3. In January 1998, Doughty retained an investigative agency to investigate Hill's assets.

4. On February 23, 1998, Doughty received an investigative report that revealed the transfer of the Marina Bay Condos. D. Ex. 71, p. 18, ex. 4.

---

**1.** "T1" refers by page number to the transcript of the trial of this action held on May 24, 2001, June 14, 2001, and August 9, 2001. "T2" refers by page number to the transcript of the trial of this action on September 19,

2001, and November 7, 2002. "P.Ex." refers by number to Plaintiff's exhibits entered into evidence in this action. "D. Ex." refers by number to Defendant's exhibits entered into evidence in this action.

5. The investigative report Doughty received on February 23, 1998, indicated that MTLC also owned property referred to as the Gulfstream Warehouse Condos, located at 3680 Investment Lane, Riviera Beach, Florida, but it did not identify the transferor. D. Ex. 71, p. 18, ex. 4. Doughty later received a copy of the warranty deed, which identified the transferor as S & A Associates, Ltd. D. Ex. 71, p. 22, ex. 16. Although Hill acquired the Gulfstream Warehouse Condos from S & A Associates, Ltd., on January 1, 1992, he had never recorded his title and had subsequently transferred them to MTLC through the deed identifying S & A Associates, Ltd. as the transferor. T1 121, 180–81, 185, 186, 423–24.

6. The investigative report Doughty received on February 23, 1998, also indicated that MTLC owned property referred to as the Boynton Beach House, located on Ocean Boulevard in Ocean Ridge, Florida, but did not identify the transferor or the date of the warranty deed. D. Ex. 71, p. 18, ex. 4. Doughty later received a copy of the warranty deed, which identified the transferor as Hillco Development Corporation ("HDC"). D. Ex. 71, p. 23, ex. 19. Although Hill had acquired the Boynton Beach House from HDC he had not recorded his title and had transferred it to MTLC through the deed identifying HDC as the transferor. T1 121, 196–98, 202, 426.

7. The transfer of the Promissory Notes was not the subject of any public record and was not identified in the investigative report received by Doughty in February 1998. D. Ex. 71, pp. 18, 21–22, ex. 3–14; T1 204. Hill had also failed to disclose his ownership of the Promissory Notes when examined under oath about all of his assets on December 10, 1991. T2 59; P.Ex. 161, p. 2215.

8. The investigative report Doughty received on February 23, 1998, indicated that MTLC owned property referred to as the PPC Facility, located at 7516 Central Industrial Drive in Riviera, Florida, but the report did not identify the transferor or identify the property as being a manufacturing facility used by a company controlled by Hill. D. Ex. 71, p. 18, ex. 4; T2 33.

9. On April 3, 1998, Doughty learned of Hill's interest in and transfer of the PPC Facility to MTLC when he received a copy of the warranty deed which was executed by Hill. P.Ex. 225. The value of the PPC facility when it was transferred to MTLC was $274,333.00.

10. On July 23, 1998, Doughty filed a fraudulent transfer action against MTLC in Florida to avoid the transfer of the Marina Bay Condos. The value of the Marina Bay Condos when they were transferred to MTLC was $365,000.00.

11. On August 10, 1998, MTLC filed counterclaims against Doughty in the Florida action. MTLC asserted that Doughty did not have the right to maintain fraudulent transfer actions because he did not have a judgment for damages against Hill. D. Ex. 41, pp. 7–11. Hill moved the California court for a stay of all collection proceedings by Doughty on the same grounds. On September 11, 1998, the California trial court found that Doughty did not have a judgment for damages, and it stayed all then-existing and future collection proceedings by Doughty against Hill. D. Ex. 19, 20.

12. On November 17, 1998, Hill served responses to Doughty's discovery in aid of execution. D. Ex. 71, p. 17–20. However, Hill did not identify, as required by the interrogatories, the transfers of the Gulfstream Warehouse Condos, the Boynton Beach House or the Promissory Notes[2]

---

2. Although the Conveyance Agreement includ-

ed in Hill's document production referenced

even though they were valued in excess of $5,000 and had been transferred by Hill between December 1, 1991, and the date of his answers to the interrogatories. D. Ex. 71, p. 22, ex. 17, T1 186–191, 204, T2 63.

13. The value of the Boynton Beach House when it was transferred to MTLC was $701,000.00 and the value of the Gulfstream Warehouse Condos was $254,305.00

14. When examined under oath as to his assets on December 10, 1991, Hill concealed his ownership of the Promissory Notes. T2 59; P.Ex. 161, p. 2215. Hill also concealed his ownership and transfer of the Gulfstream Warehouse Condos and the Boynton Beach House by failing to record his title to them and then transferring them to MTLC through deeds identifying the previous owners, rather than himself, as transferor. T1 121, T2 180–181.

15. On November 17, 1998, Doughty discovered the transfer of the North Carolina Realty when he received Hill's answers to interrogatories and document production. D. Ex. 17, ex. 17. Although the stay of all collection proceedings entered by the California trial court was in effect at that time, Doughty was not prevented from filing avoidance actions. D Ex. 19, 20, 30. At the time the North Carolina Realty was transferred to MTLC it was valued at $278,500.00.

16. The stay on collection proceedings was reversed by the California appellate court in a ruling that became final on June 16, 1999. D. Ex. 30.

17. Doughty did not discover that Hill had owned and transferred the Boynton Beach House, the Gulfstream Warehouse Condos and Promissory Notes until he deposed Hill's accountant on February 7, 2000. D. Ex. 71, p. 23; T2 62–63. Hill's bankruptcy petition was filed one week later.

18. This Court previously found that Doughty cannot be charged with knowledge of the transfers of the Gulfstream Warehouse Condos and the Boynton Beach House based upon the recorded deeds and that Hill at least partially concealed the transfers of the Gulfstream Warehouse Condos, the Boynton Beach House and the Promissory Notes. FCL 8, 14.

### *Conclusions of Law*

■ MTLC asserts the statute of limitations on Doughty's fraudulent transfer claims expired pre-petition. The alleged expiration of the statute of limitations is an affirmative defense, on which a defendant bears the burden of proof. *Brown v. Hutch*, 156 So.2d 683 (Fla. 2d DCA 1963); *Jones v. State*, 745 So.2d 403 (Fla. 3d DCA 1999).

### A. Florida Statute § 726.110(1)

■ The limitations period for Florida Statute § 726.105(1)(a) is set forth in Florida Statute § 726.110(1), which provides, in pertinent part, that a cause of action can be brought "within one year after the transfer ... was or could reasonably have been discovered" by the claimant.[3] (emphasis added)

---

the Promissory Notes, it also referenced other properties from which every appearance were transferred to MTLC by third parties.

**3.** As the Trustee's rights in this action are derivative of Doughty's, this action is not time-barred if Doughty's rights to bring avoidance actions were viable at the time Hill's

bankruptcy petition was filed. 11 U.S.C. § 544(b); *In re Andersen*, 166 B.R. 516, 523 (Bankr.D.Conn.1994); *Kaufman & Roberts, Inc, v. Gigi Adver. P'ship*, 188 B.R. 309, 312–13 (Bankr.S.D.Fla.1995).

The second clause of § 726.110(1) clearly provides an exception to the four (4) year general limitations period of the statute. In the instant case, the reasonableness of Doughty's efforts to discover Hill's assets needs to be viewed in light of the fact that the judgment entered on December 11, 1991 was vacated on February 10, 1992 by the order granting Hill a JNOV and a new trial. P.Ex. 169. For over five and a half years, Doughty lacked any form of a judgment[4] against Hill until the California appellate court reversed the JNOV, in an order that did not become final until November 20, 1997. FFCL 12; D. Ex. 17. Therefore, the Court finds Doughty was not eligible to conduct discovery in aid of execution or to pursue other execution procedures (like proceedings supplementary) until November 20, 1997.

When the judgment was reinstated, Doughty, as this Court previously found, exercised due diligence in attempting to discover Hill's assets. FFCL 14. His efforts, however, were repeatedly stymied by Hill and MTLC. Although Doughty promptly served discovery in aid of execution on December 17, 1997 (designed to identify assets owned by Hill, including assets transferred since December 1, 1991) Hill failed to serve responses for almost a year. D. Ex. 71, pp. 17–20. In fact, Hill only served discovery responses after a trial court ordered him to answer all interrogatories and produce all records, without objection. D. Ex. 71, pp. 17–20. Hill also secured a stay on all then existing and future collection activities prior to serving his discovery responses. D. Ex. 71, pp. 17–20; D. Ex. 19, 20.

In the meantime, Doughty also hired an investigative agency in January 1998, to investigate Hill's assets. On February 23, 1998, he discovered the transfer of the Marina Bay Condos, and timely filed an avoidance action on July 23, 1998.

However, Doughty's investigation did not uncover the other transfers which, as this Court previously found, were at least partially concealed by Hill. FFCL 8. First, when examined under oath as to his assets on December 10, 1991, Hill concealed his ownership of the Promissory Notes. T2 59; P.Ex. 161, p. 2215. Hill also concealed his ownership and transfer of the Gulfstream Warehouse Condos and the Boynton Beach House by failing to record his title to them and then transferring them to MTLC through deeds identifying the previous owners, rather than himself, as transferor. T1 121, T2 180–181, 185, 192, 196–197, 200–203. Hill further concealed the transfers of the Gulfstream Warehouse Condos, the Boynton Beach House and the Promissory Notes by failing to identify them in his sworn answers to interrogatories served on November 17, 1998[5]. T1 186–191, 202–205. Hill's sworn testimony understandably caused Doughty to believe that third parties had owned these assets and transferred them to MTLC.

Clearly, Hill's list of fraudulent deceptions over the years left Doughty ignorant of the facts and the circumstances of his claims as to the Gulfstream Warehouse Condos, the Boynton Beach House and the

4. In California, the statute of limitations on a fraudulent conveyance action does not begin to run until the judgment becomes final. *Cortez v. Vogt*, 52 Cal.App.4th 917, 60 Cal.Rptr.2d 841 (1997)

5. Although the Conveyance Agreement included in Hill's document production referenced the Promissory Notes, it also referenced other properties that from every appearance were transferred to MTLC by third parties. Further, Hill's sworn testimony in 1991 and 1998, that he did not own the Promissory Notes led Doughty to believe that the Promissory Notes had been owned and transferred to MTLC by a third party. D. Ex. 71, p. 22, ex 17; T1 204–05; T2 62–63.

Promissory Notes. There is no doubt in the Court's mind that Hill took positive steps to conceal the transfers. Therefore, the Court agrees with the Trustee's argument that Doughty did not and could not reasonably have discovered the transfers of the Gulfstream Warehouse Condos, the Boynton Beach House and the Promissory Notes until deposing Hill's accountant on February 7, 2000. Accordingly, the Court finds that the Trustee is entitled to avoid the transfers of the Gulfstream Warehouse Condos, the Boynton Beach House and Promissory Notes under Florida Statute § 726.110(1), as the causes of action were clearly filed within one year of when the transfers were or reasonably could have been discovered.

### Equitable Doctrines

In regards to the PPC Facility and North Carolina Realty, the Trustee asserts the doctrine of equitable estoppel is applicable. Trustee reasons equitable estoppel can be used to prevent MTLC from asserting that Doughty should have been bringing fraudulent transfer actions against it while the stay issued by the California court, as to all then-existing and future collection proceedings, was in effect.

 MTLC argues that equitable doctrines are inapplicable to § 726.110(1) because it is a statute of repose. However, Trustee asserts that under the test applied in Florida for distinguishing statutes of repose from statutes of limitation, § 726.110(1) is a statute of limitation:

In contrast to a statute of limitation, a statute of repose precludes a right of action after a specified time which is measured from the incident of malpractice, sale of a product, or completion of improvements, rather than establishing a time period within which the action must be brought measured from the point in time when the cause of action accrued.

*Univ. of Miami v. Bogorff,* 583 So.2d 1000, 1003 (Fla.1991).

In providing that an action is extinguished unless brought within one year after the transfer was or could reasonably have been discovered, § 726.110(1) does not cut off the right of action after a specified time measured from the date of the transfer, but establishes a period within which an action shall be brought. Under Florida law, § 726.110(1) is therefore a statute of limitation, as Trustee asserts, rather than a statute of repose and equitable doctrines are applicable.

 Judicial estoppel is an equitable doctrine used to prevent litigants from "playing fast and loose with the courts" through inconsistent pleadings. *Blumberg v. USAA Cas. Ins. Co.,* 790 So.2d 1061, 1066 (Fla.2001). Judicial estoppel bars a party who successfully takes a position in a prior judicial proceeding from asserting a conflicting position in a subsequent action to the prejudice of another party.[6] *Keyes Co. v. Bankers Real Estate Partners, Inc.,* 881 So.2d 605, 606 (Fla. 3d DCA 2004). Identity of parties, formerly a requirement of judicial estoppel, can be dispensed with based upon fairness or policy considerations. *Blumberg,* 790 So.2d at 1067. The Trustee asserts that fairness considerations compel the application of judicial estoppel in this action. The fairness considerations cited by the Trustee include the fact that during a nine-month period between September 11, 1998, and June 16, 1999, a California Court, at Hill's request, stayed all then existing and future collec-

---

**6.** Florida no longer requires that the party claiming judicial estoppel was misled or changed its position based upon the other party's conduct. *Grau v. Provident Life and Acc. Ins. Co.,* 899 So.2d 396, 399 (Fla. 4th DCA 2005).

tion proceedings by Doughty against Hill. Trustee contends another consideration is that MTLC countersued Doughty for bringing the Marina Bay Condos fraudulent transfer action and alleged that Doughty did not have grounds to bring the suit as he did not have a final judgment. Based upon the above, Trustee argues that MTLC should not be allowed to now assert that Doughty should have been bringing fraudulent transfer actions against it while the stay was in effect, and that this Court, a court of equity, should apply the doctrine of judicial estoppel.

Estoppel has long been recognized in Florida as a bar to assertions regarding statutes of limitation. *Major League Baseball v. Morsani*, 790 So.2d 1071, 1078 (Fla.2001).[7] Florida Statute § 726.111, specifically provides that, unless displaced by the provisions of § 726.101–112, the principles of equity—including estoppel—supplement those provisions. Thus, the Trustee argues that while § 726.110(1) sets forth a limitations period, it does not expressly preclude the application of estoppel and therefore cannot be interpreted as displacing it. *See, e.g., Fla. Dept. of Health v. S.A.P.*, 835 So.2d 1091, 1098 (Fla.2002). The Court agrees that Section 726.110(1) does not preclude the application of estoppel and must therefore determine whether the doctrine of estoppel can be properly applied in the instant case.

██ "Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' and thus poses little threat to judicial integrity." *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Although Hill was successful in securing a stay of all then existing and future collection proceedings from the California Court, that stay did not prevent Doughty from filling avoidance actions against Hill. Additionally, the mere fact that MTLC countersued Doughty for filing the Marina Bay Condos fraudulent transfer action does not in and of itself serve as a good basis for this Court to now apply the doctrine of judicial estoppel, especially since there was no judicial determination in favor of MTLC. Based upon the above, the Court finds there was not an inconsistent court determination that would pose a threat to judicial integrity and that the doctrine of judicial estoppel is not applicable.

Since Doughty originally discovered the transfer of the PPC facility on April 3, 1998, and the stay that was in effect from September 11, 1998 until July 16, 1999 did not prevent him from filling avoidance actions, a period of more then one year had passed when he filed the avoidance action on November 4, 1999. On November 17, 1998, Doughty discovered the transfer of the North Carolina Realty. Thus, in order for the avoidance action to have been filed timely as to the North Carolina Realty, Doughty would have had to file an avoidance action within one year of November 17, 1998.

██ Although Trustee primarily bases its argument as to why the transfer of the North Carolina Realty should be avoided on the doctrine of equitable estoppel, Trustee's brief does contain a one sentence footnote that states the doctrine of equitable tolling is applicable to the North Carolina Realty. Therefore, the Court will also briefly discuss the doctrine of equitable tolling. In regards to equitable tolling, the Eleventh Circuit has stated, "[w]hen a defendant's fraudulent deceptions leave a plaintiff ignorant of the facts or even the circumstances of his claim, the limitations

---

**7.** § 95.051, *Fla. Stat.*, does not prohibit the application of the doctrine of estoppel to assertions based upon statutes of limitation. 790 So.2d at 1077–80.

period is tolled until discovery of the fraud." *IBT Int'l v. Northern,* 408 F.3d 689, 701 (11th Cir.2005). In the instant case, even if the Court were to find that the doctrine of equitable tolling could be applied to the North Carolina Realty, the latest the trigger date could be is the day which Doughty discovered the transfer, November 17, 1998. This is due to the fact that the stay did not prevent Doughty from filing avoidance actions. Since the action was not brought until after Hill filed for bankruptcy on February 14, 2000, the filing would not have occurred within one year of when Doughty actually discovered the fraudulent transfer.

Accordingly, the Court finds the above filings did not occur within one year of when the transfers of the PPC Facility and the North Carolina Realty were or could reasonably have been discovered by Doughty.

### *Application of Florida Statute § 56.29*

The Court now considers Trustee's alternative argument that the twenty year limitation period under Florida Statute § 56.29 is the applicable limitations period.

 The Court finds that neither of the two jurisdictional prerequisites for supplementary proceedings under Fla. Stat. § 56.29 have been satisfied. There is no record evidence that an unsatisfied writ of execution was delivered to a Florida sheriff or an affidavit averring that the writ is valid and unsatisfied. *See* Fla. Stat. § 56.29(1); *General Trading, Inc. v. Yale Materials Handling Corp.,* 119 F.3d 1485, 1496 (11th Cir.1997). From the clear language of the statute itself as well as case law it is clear that these requirements are a prerequisite to bringing proceedings

supplementary under § 56.29. *Bleidt v. Lobato,* 664 So.2d 1074, 1075 (Fla. 5th DCA 1995) (judgment creditor must hold a writ of execution which remains unsatisfied).

 Additionally, § 56.29 does not create substantive rights of recovery nor provide a basis for entry of a money judgment. Proceedings supplementary through § 56.29 are a procedural mechanism that provide a judgment creditor with means to investigate assets of the judgment debtor that might be used to satisfy a judgment. *Conrad v. McMechen,* 338 So.2d 1306, 1307 (Fla. 4th DCA 1976). Thus, while proceedings supplementary in general may be commenced during the twenty year life of a judgment, § 56.29 does not extend or create new the statute of limitations for a fraudulent transfer to twenty years. The applicable limitation for fraudulent transfer actions is contained in Fla. Stat. § 726.110. *Real Estate Corp. of Florida v. Dawn Developers, Inc.,* 644 So.2d 145 (Fla. 5th DCA 1994). Based upon the above, the Trustee cannot use Florida Statute § 56.29 as an alternative basis to set aside the transfers of the PPC Facility and the North Carolina Realty.

### *CONCLUSION*

The Court holds that the Trustee is entitled to avoid the transfer of the Marina Bay Condos and the Promissory Notes and to a monetary judgment of $955,305.00 [8]. Trustee is also entitled to (1) prejudgment interest at the rate stipulated by the parties of 3.14625% from September 30, 1992, (2) post-judgment interest at the current legal rate of 3.82% and (3) the value of the payments received by MTLC to date on the Promissory Notes [9]. The Trustee is

---

8. The monetary judgment is comprised of (1) $254,305.00 in relation to the Gulfstream Warehouse Condos and (2) 701,000.00 in relation to the Boynton Beach House.

9. Trustee asserts the Promissory Notes were paid in full and that MTLC received a total of $1,275,455.58 under the Promissory Notes. However, since the Court does not have evi-

not entitled to avoid the transfers of the PPC Facility and North Carolina Realty. A separate judgment will be entered in accordance with these Findings of Fact and Conclusions of Law.

dence in support of Trustee's assertion and MTLC has not agreed to enter into a stipulation as to the value of the Promissory Notes the Court cannot include a figure as to the amount the Trustee is entitled to under the Promissory Notes.