957 So.2d 58 (2007)
EXTENDICARE, INC., Appellant,
v.
The ESTATE OF James J. McGILLEN, etc., et al., Appellees.
No. 5D06-969.
District Court of Appeal of Florida, Fifth District.
May 4, 2007.
*60 Connolly C. McArthur and Donna J. Fudge of Buckley & Fudge, P.A., St. Petersburg, for Appellant.
Susan B. Morrison, of Law Office of Susan B. Morrison, P.A, and Linda G. Moreno of Wilkes & McHugh, P.A., Tampa, for Appellee.
THOMPSON, J.
Extendicare, Inc. ("Extendicare") appeals from an order denying its motion to quash service of process and to dismiss. It is one of more than a dozen corporations and individuals sued by the Estate of James J. McGillen ("McGillen"). James J. McGillen lived in University Center East ("Nursing Home") in Volusia County from July 2001 until his discharge in January 2004. McGillen's second amended complaint raised various claims for negligence, breach of fiduciary duty, wrongful death, civil conspiracy, and common law concert of action. We reverse and remand for dismissal of the complaint against Extendicare.
Extendicare is a Canadian corporation and non-resident of Florida. It is the parent corporation of Extendicare Health Services, Inc. ["EHSI"], which is an upstream corporation of Extendicare Health Network, Inc. ["EHNI"], which is a member of Partners Health Group, LLC ["PHG"], which is a member of Partners Health Group-Florida, LLC ["PHGFL"]. McGillen alleged that Extendicare, its subsidiaries, three other defendant corporations, and five individual defendants all operated the Nursing Home. Its second amended complaint included the following jurisdictional allegations relating to Extendicare:
15. [Extendicare] is a Canadian corporation, which is doing business in Florida.
16. [Extendicare] . . . operated the nursing home during JAMES J. McGILLEN'S residency. . . .
* * *
35. [Extendicare] is involved in the ownership, operation, and management of nursing homes throughout the nation, . . . either directly or through wholly owned subsidiaries, . . . which subsidiary corporations act as agents of [Extendicare].
36. [Extendicare] controls the operation, planning and management of nursing home facilities [through] . . . control of . . . marketing, . . . human resources management, . . . the preparation and filing of documents for . . . reimbursement, . . . the preparation and filing of state licensure and certification, the provision of legal services . . ., financial and accounting control through fiscal policies . . ., creation and implementation of clinical policies and procedures, and control over . . . payor mix, admissions and discharges, cash collection, net revenue, information technology, and staffing.
37. [Extendicare], in conjunction with its subsidiaries and agents, . . . operated and managed the facility through a joint venture with [other defendants] in that:
a. [Extendicare] [and other defendants] . . . agreed to set up a scheme whereby [Extendicare] and EHSI would compensate the other Defendants for permitting [them] to improperly utilize the corporate forms of the other Defendants to continue to receive revenue *61 from the unlicensed operation of nursing homes in . . . Florida . . . ;
* * *
d. The Defendants' joint enterprise was . . . facilitated through the use of overlapping, interlocking management employees and boards of directors; through transfers of employees within the joint enterprise to various corporate entities without regard to corporate form; and through mixed accounting processes . . . without regard to corporate form.
* * *
40. [Extendicare] and EHSI, . . . conspired with [other defendants] . . . to unlawfully profit from nursing home operations in Florida through a . . . scheme . . . to limit liability[ ][and] maximize revenues . . . from unlicensed operation and management of Florida nursing homes, including [the Nursing Home].
41. [T]he Defendants . . . form[ed] a conspiracy . . . to [operate] nursing homes in Florida without adequate capital or insurance. . . .
42. In furtherance of this conspiracy, [Extendicare] and EHSI fraudulently represented . . . that the Extendicare companies no longer did business in . . . Florida as of December 31, 2000. [But they] simply restructured their organization and engaged in joint ventures to continue to reap the profits of unlicensed nursing home operations. . . .
* * *
47. . . . [Extendicare] and EHSI did not cease their nursing home operations . . ., but rather[ ] continued to engage in the unlicensed operation and management of . . . nursing facilities . . . and to receive revenues . . . via the joint enterprises, . . . contracts, and other agreements. . . .
* * *
63. Beginning in late 2000, [Extendicare] [and other defendants] conspired together to create [another corporation] as a separate business entity for the following purposes: a) management of nursing homes . . ., and b) entering into contracts with [Extendicare] . . . and other subsidiaries . . . for the purchase of various goods and services from the . . . subsidiaries. . . .
* * *
66. [Extendicare] and EHSI could have contracted directly with [another defendant] . . . but chose not to do so . . . to shield EHSI and [Extendicare] from liability by placing a series of newly formed shell corporations between themselves and the . . . owner of the facilities, thereby improperly using the corporate form to shield themselves from . . . liability.
67. Through . . . joint enterprises, agency relationships, and various agreements and contracts, [Extendicare] and EHSI controlled the operation, planning and management of [the Nursing Home]. The authority . . . includes [all allegations in paragraph 36].
* * *
70. [Extendicare] and EHSI engaged in substantial, continuous and direct communication and management of each of its nursing home facilities throughout Florida. . . .
71. [Extendicare] and EHSI by undertaking the direct responsibility for establishing and controlling the operation and management of nursing homes in . . . Florida, engaged in substantial, ongoing activity within this state.
72. The actions and business activities in . . . Florida of [Extendicare] were . . . *62 substantial, continuous and constitute sufficient contacts to subject [them] to personal jurisdiction . . . [under] § 48.193 Fla. Stat. . . . Further, each of the Defendants, by virtue of their numerous and ongoing contacts with Florida and tortious acts in Florida, should reasonably expect to be haled into a Florida court.
Extendicare filed a motion to quash service of process and to dismiss, which was accompanied by the affidavit of Richard Bertrand, Extendicare's CFO. Bertrand was Extendicare's CFO since September 2004 and was employed by Extendicare or its subsidiaries for 28 years. Extendicare alleged that it was a foreign corporation, distinct from the other corporate defendants. During James McGillen's residency, Extendicare did not in Florida: conduct business; own or lease property; maintain an office; own, operate, or control nursing homes; exercise the control described in paragraphs 36 and 67 of the complaint; provide care to or injure James McGillen; commit tortious acts; conspire or act in concert with the other defendants to injure James McGillen; act in any joint enterprise or agency relationship to own, operate, manage, or control nursing homes; or engage in substantial and continuous communication with and management of nursing homes. Extendicare's motion to quash summarized Extendicare's corporate relationship with its subsidiaries and affiliates, but argued that its relationship did not provide a basis for personal jurisdiction.
Bertrand stated in his affidavit and deposition that, excluding its downstream subsidiaries' activities, Extendicare had not conducted business or entered into contracts or agreements for services in Florida. Since January 2001, Extendicare's downstream subsidiaries had not operated nursing homes in Florida. McGillen argued below and on appeal that Bertrand's affidavit did not sufficiently challenge jurisdiction because Bertrand was not an Extendicare employee at all times relevant to the action and, accordingly, lacked personal knowledge to support his affidavit.
Furthermore, McGillen filed a barrage of documents, deposition testimony from other cases involving some of the same defendants, agreements between other defendants, and orders from other cases where Extendicare unsuccessfully challenged jurisdiction. The filings included deposition testimony from other cases in which codefendants and other individuals testified about their interaction with employees of EHSI or unidentified Extendicare entities based in the U.S., orders from other cases denying Extendicare's motions to compel arbitration or motions to dismiss, Extendicare's 2001 annual report and a 2002 press release, and Bertrand's deposition, which noted he had served as an officer in two of the subsidiaries.
In November 2005, the court heard Extendicare's motion to quash service and to dismiss. It denied the motion, concluding that Bertrand lacked personal knowledge to support his affidavit because he was not employed at Extendicare at all relevant times. Notwithstanding the affidavit,
[McGillen's filings] establish[ed] . . . that over a period of years, [Extendicare] operated nursing . . . facilities in Florida; that the Florida operations accounted for significant claims reserves and liability costs incurred by [Extendicare]; and, that [Extendicare] had and maintains budgetary approval for, and continues to derive revenue from, business operations in Florida. [Extendicare's] activities in Florida and its connections to the state are such that it should have *63 reasonably anticipated being haled into Florida courts.
Extendicare timely appealed.
We review de novo an order finding that personal jurisdiction exists. Enic, PLC v. F.F.S. & Co., 870 So.2d 888, 889 (Fla. 5th DCA 2004); Res. Healthcare of Am., Inc. v. McKinney, 940 So.2d 1139, 1140 (Fla. 2d DCA 2006). In determining the propriety of the exercise of long-arm jurisdiction over a foreign defendant, the court conducts a two-step inquiry. Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla.1989); Hilltopper Holding Corp. v. Estate of Cheryl Cutchin, 955 So.2d 598 (Fla. 2d DCA 2007). In the first step, the court considers whether the plaintiff has alleged sufficient jurisdictional facts to subject the defendant to jurisdiction under section 48.193, Florida Statutes. Venetian Salami, 554 So.2d at 502; Enic, PLC, 870 So.2d at 889-90; Hilltopper, 955 So.2d at 601. If it has, the court must inquire whether the defendant possesses sufficient minimum contacts with Florida to meet constitutional due process requirements. Venetian Salami, 554 So.2d at 500; Enic, PLC, 870 So.2d at 890; Hilltopper, 955 So.2d at 601. This inquiry asks whether the defendant availed itself of the privilege of doing business in Florida or committed acts with an effect in Florida such that it would anticipate being haled into Florida's courts. Enic, PLC, 870 So.2d at 890; Hilltopper, 955 So.2d at 601.
The parties agree that McGillen's second amended complaint alleged jurisdictional facts to support long-arm jurisdiction under section 48.193, Florida Statutes (2004). Therefore, McGillen met the first prong of the Venetian Salami inquiry. Once the plaintiff alleges jurisdictional facts to support long-arm jurisdiction, the burden shifts to the defendant to file a legally sufficient affidavit or other sworn proof that contests the essential jurisdictional facts in the complaint. Venetian Salami, 554 So.2d at 502; Hilltopper, 955 So.2d at 601. "To be legally sufficient, the defendant's affidavit must contain factual allegations which, if taken as true, show that the defendant's conduct does not subject him to jurisdiction." Hilltopper, 955 So.2d at 601 (emphasis in original). If the affidavit fully disputes the plaintiff's jurisdictional allegations, the burden shifts back to the plaintiff to prove by affidavit or other sworn proof that a basis for long-arm jurisdiction exists. Venetian Salami, 554 So.2d at 502; Hilltopper, 955 So.2d at 602. If the plaintiff's sworn proof fails to refute the allegations in the defendant's affidavit and fails to prove jurisdiction, the court must grant the motion to dismiss. Venetian Salami, 554 So.2d at 502; Hilltopper, 955 So.2d at 602.
McGillen claimed that Bertrand was not an Extendicare officer throughout McGillen's residency in the Nursing Home; therefore, his affidavit was not based on personal knowledge. The trial court agreed with McGillen and held that Bertrand's affidavit was legally insufficient to shift the burden back to McGillen to prove jurisdiction. This was error. McGillen did not refute Bertrand's allegations, but merely attacked the basis of Bertrand's knowledge. The Second District rejected this approach in a similar case:
The Estate argues . . . it offered evidence in the form of [the corporate representative's] deposition transcript and that certain statements in the deposition called into question the basis of [the representative's] knowledge of the allegations in her affidavits. However, the Estate misunderstood its burden. Once [the parent corporations] filed [their representative's] sworn facially sufficient affidavits that refuted the Estate's jurisdictional allegations, the question for the trial court was whether, taking the allegations in the affidavits as true, there *64 was a basis for jurisdiction over [the parent corporations]. Because the allegations of [the representative's] affidavits were to be taken as true, the Estate's efforts to discredit the affidavits by contesting the credibility of the affiant were misplaced.
Hilltopper, 955 So.2d at 603 (emphasis in original).
Bertrand's affidavit sufficiently refuted the jurisdictional allegations in McGillen's complaint. McGillen alleged that jurisdiction existed based on Extendicare's operation and control of the nursing home, its substantial business activity in Florida, its agency relationship with its subsidiaries, and its involvement in a joint venture or conspiracy. Bertrand fully disputed these allegations. See Hilltopper, 955 So.2d at 601; Res. Healthcare, 940 So.2d at 1142. This sufficed to shift the burden back to McGillen to come forward with sworn proof to establish a basis for jurisdiction. See Hilltopper, 955 So.2d at 602; Res. Healthcare, 940 So.2d at 1142.
In its answer brief, McGillen repeats that Bertrand's affidavit was not sufficient to shift the burden back to McGillen, but provides little discussion regarding Venetian Salami's second prong and Extendicare's contacts with Florida. Allegedly, "the deposition and trial testimony of Extendicare's own officers [showed] that [it was] very active in the operations of its Florida nursing homes and that it actively lobbie[d] the Florida legislature for tort reform." Furthermore, Bertrand did not address "Extendicare's role in operating budget review and approval for the Nursing Home." McGillen does not elaborate, and neither point is persuasive. McGillen's filings did not contradict the jurisdictional allegations in Bertrand's affidavit.
McGillen submitted deposition transcripts from other cases where it is unclear whether they concerned Extendicare or various Extendicare subsidiaries and affiliates operating in the U.S. The individuals testifying clarified that they either did not know which particular Extendicare entity they were working with, or that they had worked with EHSI when it was conducting operations in the U.S. McGillen offered no evidence to prove that Extendicare operated the Nursing Home in question. See Hilltopper, 955 So.2d at 603.
Throughout its complaint, McGillen emphasized that, inter alia, Extendicare acted through its subsidiaries or agents and that it established corporations as buffers between it and the Nursing Home. However, McGillen offered no evidence to show that Extendicare controlled its subsidiaries to the extent that an agency relationship existed that would justify long-arm jurisdiction. See Hilltopper, 955 So.2d at 603. Without more, McGillen's allegations concerning Extendicare's budgetary role or the fact that Bertrand served as an officer in some of Extendicare's subsidiaries did not show the "high and very significant" degree of control over internal day-to-day operations that is required to support a finding that personal jurisdiction is appropriate under an agency theory. See Enic, PLC, 870 So.2d 888, 891-92 (Fla. 5th DCA 2004). More important, though the complaint invoked agency allegations, McGillen explicitly waived this issue on appeal.
McGillen presented no evidence of Extendicare's "direct" actions, except that it conducted budget reviews and eventually collected revenue from subsidiary corporations. The material submitted by McGillen established merely that Extendicare was a parent corporation, but ownership of a subsidiary corporation by an out-of-state parent corporation, without more, does not support a finding that long-arm jurisdiction exists. See Res. Healthcare, 940 So.2d at 1143; Walt Disney Co. v. Nelson, 677 So.2d 400, 403 (Fla. 5th DCA 1996). This is so even where the parent was disclosed on state licensure filings or *65 where the parent also performed accounting and payroll functions for the subsidiary. See Greystone Tribeca Acquisition, L.L.C. v. Ronstrom, 863 So.2d 473, 476 (Fla. 2d DCA 2004); Qualley v. Int'l Air Serv. Co., 595 So.2d 194, 196 (Fla. 3d DCA 1992). The court erred by finding that long-arm jurisdiction existed.
Finally, we reject McGillen's primary argument  that Extendicare is barred by res judicata or collateral estoppel from challenging personal jurisdiction because other courts, in cases involving different plaintiffs and injuries, denied Extendicare's motions to dismiss. The other cases involved different parties and different causes of action. See Topps v. State, 865 So.2d 1253, 1255 (Fla.2004) ("The doctrine of res judicata applies when four identities are present: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality of the persons for or against whom the claim is made."). Nor does judicial estoppel apply; Extendicare's claim of lack of jurisdiction was not inconsistent with a claim successfully maintained in another judicial proceeding. See, e.g., Grau v. Provident Life & Accident Ins. Co., 899 So.2d 396, 400 (Fla. 4th DCA 2005).
Bertrand's affidavit contained allegations that, if taken as true, contradicted McGillen's jurisdictional allegations. McGillen failed to offer proof that proved jurisdiction or refuted Bertrand's allegations, and the court erred by denying the motion to dismiss.
Accordingly, we REVERSE and REMAND for the trial court to dismiss the complaint as to Extendicare.
PALMER and MONACO, JJ., concur.