NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

NATIONAL AUTO SERVICE CENTERS, )
INC., a Florida corporation; NATIONAL )
AUTO PROPERTIES, INC., a Florida )
corporation; LEONARD D. LEVIN, )
individually; CAROL LEVIN, individually; )
DURANT HOLDINGS, LLC; and )
BEDFORD INVESTMENTS, LLC, )
                               )
          Appellants, )
                               )
v. )      Case No.  2D14-3632
                               )
F/R 550, LLC, a Florida limited liability )
company; and F/R 3329, LLC, a Florida )
limited liability company, )
                               )
          Appellees. )
                               )

Opinion filed March 30, 2016.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Pinellas County;
Jack Day, Judge.

Stephen O. Cole and Nancy S. Paikoff of
MacFarlane Ferguson & McMullen,
Clearwater, and Michael J. Stanton of
Stanton Cronin Law Group, PL, Tampa,
for Appellants.

Courtney L. Fernald and Leonard S.
Englander of Englander Fischer, St.
Petersburg, for Appellees.

SALARIO, Judge.

This is an appeal from a partial final judgment in proceedings supplementary in favor of appellees, F/R 550, LLC and F/R 3329, LLC (collectively F/R), based on efforts by F/R to collect on a judgment it obtained against appellee, National Auto Service Centers, Inc. (National Auto Service).[1]  The trial court voided the assignments of three promissory notes from National Auto Service to appellee, National Auto Properties, Inc. (National Auto Properties), pursuant to the Florida Uniform Fraudulent Transfer Act (FUFTA), our state's codification of the Uniform Fraudulent Transfer Act (Uniform Act).  See §§ 726.105(1)(a), .108(1)(a), Fla. Stat. (2013).  F/R alleged and the trial court found that these assignments were made by National Auto Service with "actual intent to hinder, delay, or defraud creditors."

FUFTA provides that a claim based on such allegations "is extinguished" unless brought "within 4 years after the transfer was made . . . or, if later, within 1 year after the transfer . . . was or could reasonably have been discovered."  § 726.110(1).  This case presents two issues of first impression in our state courts concerning this statutory provision: (1) whether the one-year savings clause is triggered by a creditor's discovery of the transfer or, instead, by the creditor's discovery of the facts showing the transfer to have been fraudulent; and (2) whether this statutory bar is subject to a

---

[1]The opinion is being released simultaneously with an opinion disposing of companion case 2D14-4064.  The two orders on appeal in these cases are part of the same trial court proceeding and were titled partial final judgments by the trial court.  The parties have not raised and we do not address whether this is the most appropriate description of these orders.

claimant's assertion of equitable estoppel.[2] We hold that discovery of the transfer is the operative fact and that the statute is one of repose that is not subject to equitable estoppel. As a result, the judgment must be reversed.

I.

A.

In September 2005, F/R entered into two thirty-year leases with National Auto Service. National Auto Service owned automobile repair businesses, and it operated two such businesses on the two properties that it leased from F/R. In September 2007, National Auto Service sold those two businesses, along with a third business operated at a different location, in three separate transactions to three different buyers. Each buyer gave National Auto Service a promissory note for a portion of the purchase price for the business it was buying. Roughly two months after the sales, on November 14, 2007, National Auto Service assigned the three promissory notes it received to National Auto Properties, its parent company, which was owned by appellee, Leonard Levin.

By November 2008, neither National Auto Service nor the buyers of its former car repair businesses were making rent payments to F/R as required by the leases. As a result, F/R sued National Auto Service for breach of contract. It prevailed and secured a final summary judgment against National Auto Service for $2,100,578.64 on October 26, 2010. F/R then began discovery in aid of execution.

---

[2]Although National Auto Service is a listed appellant within this proceeding, the issues on appeal specifically relate to the other parties to which National Auto Service effectuated the transfers of assets. As a result, the substance of this opinion is directed toward those parties.

On December 8, 2010, F/R served National Auto Service with a set of document production requests that sought, among other things, all of National Auto Service's accounting books and records. National Auto Service objected, and no documents were produced. On January 30, 2012, F/R took Mr. Levin's deposition. He testified that National Auto Service assigned the promissory notes to National Auto Properties to satisfy debts owed by National Auto Service to National Auto Properties. F/R states that this is the first time it learned of the assignments.

During the deposition, F/R orally requested accounting documents concerning the assignments and corresponding debts, and it confirmed that request in a follow-up letter in early February 2012. National Auto Service did not produce the records. Ten months later, on October 1, 2012, F/R filed a motion to compel asserting that National Auto Service was required to produce the accounting documents in response to F/R's December 2010 requests for production. That motion was granted, and the documents were produced on January 8, 2013. Those documents did not reflect the debts owed to National Auto Service by National Auto Properties about which Mr. Levin testified at his deposition. According to F/R, the documents established that Mr. Levin testified falsely about the reasons for the assignment and, for the first time, showed that the assignments were intended to hinder, delay, or defraud creditors.

B.

On March 8, 2013, F/R filed motions for proceedings supplementary to execution and to implead National Auto Properties and Mr. Levin pursuant to section 56.29, Florida Statutes (2013), on the theory that National Auto Service had fraudulently transferred property to them. Later, on September 27, 2013, F/R sought to implead Mr.

Levin's wife and two limited liability companies he controlled on the same theory.[3]  The trial court entered orders granting F/R proceedings supplementary, impleading the Levin Parties, and scheduling an evidentiary hearing on the merits of F/R's allegations of fraudulent transfer.

A word about procedure is necessary to understand the issues presented to us.  Proceedings supplementary under section 56.29 are ancillary, postjudgment proceedings conducted in the same action in which the judgment was obtained.  See Fundamental Long Term Care Holdings, LLC v. Jackson-Platts, 110 So. 3d 6, 7-8 (Fla. 2d DCA 2012).  They enable the judgment creditor to execute upon the property of the judgment debtor, regardless of whether that property is held by the debtor or by a third party, and thus spare the creditor the burden and expense of maintaining separate actions to collect the judgment.  See § 56.29(5); Jackson-Platts, 110 So. 3d at 8. Section 56.29 is thus typically regarded as a procedural mechanism for reaching assets to which the judgment creditor is legally entitled rather than as an independent font of substantive rights and obligations.  See, e.g., Morton v. Cord Realty, Inc., 677 So. 2d 1322, 1324 (Fla. 4th DCA 1996).

Section 56.29 does not regulate this procedure in detail, however, and its application in the real world can become messy.  The statute does not require that the judgment creditor file a pleading stating the factual and legal basis for the proceedings supplementary or identifying the relief it seeks.  § 56.29(1); Jackson-Platts, 110 So. 3d at 8-9.  Further, although the statute empowers courts to void transfers of property

_____

[3]We refer to National Auto Properties, Mr. Levin, his wife, and the two limited liability companies collectively as the Levin Parties.

made "to delay, hinder[,] or defraud creditors," § 56.29(6)(b), it does not explain whether a claim that a judgment debtor has made a fraudulent transfer is governed exclusively by section 56.29 or whether, and in what respects, FUFTA or some other law is equally or more applicable. As a result, the record does not disclose any pleading that stated the basis upon which F/R intended to proceed against the Levin Parties, identify the relief it sought, or specify the issues being presented to the trial court for resolution.[4]

The record of the proceedings in the trial court and briefs here, however, make it clear that the claim F/R presented to the trial court was a substantive cause of action under FUFTA.[5] It was based on the theory that the assignment of the notes to National Auto Properties was actually fraudulent as to its creditors, and F/R's claim sought both to void those assignments and to obtain monetary relief pursuant to section

---

[4]Section 56.29 was recently amended by Senate Bill 1042 in a way that may avoid this problem. The bill was approved by Governor Scott on March 9, 2016, and will take effect on July 1, 2016. Section 56.29(9) will now provide that in supplemental proceedings "[t]he court may entertain claims . . . under chapter 726 [FUFTA] . . . . Claims under chapter 726 brought under this section shall be initiated by a supplemental complaint and served as provided by the rules of civil procedure, and the claims under the supplemental complaint are subject to chapter 726 and the rules of civil procedure."

[5]One issue that might be relevant but was not raised is whether the specific provisions of FUFTA or the more general provision of section 56.29 supply the applicable rule concerning when a judgment creditor may use proceedings supplementary to avoid a fraudulent transfer. Recently, in Biel Reo, LLC v. Barefoot Cottages Development Co., 156 So. 3d 506 (Fla. 1st DCA 2014), the First District held that a supplementary proceeding to avoid fraudulent transfers under sections 56.29(5) and (6) may be brought at any time during the twenty-year life of a judgment, rather than the time specified in FUFTA, because section 56.29(1) allows a proceeding supplementary to be brought "[w]hen any person or entity holds an unsatisfied judgment . . . ." Id. at 510 (quoting § 56.29(1)). Consistent with F/R's presentation of the case to the trial court, at oral argument F/R disclaimed reliance on Biel Reo. We are thus not required to reach this issue here, and we do not consider whether section 56.29 could have provided an alternative source of relief.

726.108 in an amount representing the fair market value of the notes at the time they were assigned.

The trial court heard this claim without a jury. The Levin Parties moved for an involuntary dismissal arguing that F/R's claim was extinguished under section 726.110(1) because it was not brought within four years of the assignments or one year of the date the assignments were discovered. They argued that the assignments were made on November 14, 2007, more than five years before the March 8, 2013, commencement of the supplemental proceedings, and were discovered by F/R no later than Mr. Levin's January 30, 2012, deposition, more than thirteen months before the proceedings were commenced. F/R concedes that the claim was not brought within four years of the assignments but responded that the one-year savings clause was not triggered until January 8, 2013, when it claimed it first discovered the "fraudulent nature" of the transfers, by which it meant the facts showing that the assignments were made with actual intent to hinder, delay, or defraud creditors. F/R further asserted that the Levin Parties were equitably estopped from asserting section 726.110(1) as a bar to its claim because of the alleged false testimony regarding the reasons for the assignment and the delay in producing accounting documents.

In a written order denying the Levin Parties' motion for involuntary dismissal, the trial court agreed with F/R that the one-year savings clause in section 726.110(1) was not triggered until F/R discovered or should have discovered the fraudulent nature of the assignments. It did not reach F/R's alternative argument that the Levin Parties were equitably estopped from asserting the protections of section 726.110(1). The trial court thereafter entered a partial final judgment finding that the

assignments were made with actual intent to hinder, delay, or defraud creditors and declared those transfers void under FUFTA.  This timely appeal followed.

## II.

We first address whether the one-year savings clause in section 726.110(1) is triggered by discovery of the transfer or by discovery of the facts showing that transfer to have been fraudulent.  If the latter, the parties agree that the action is timely; if the former, they agree it is not.  There is no precedent on the question from Florida's state courts, and courts interpreting the Uniform Act in other jurisdictions have reached differing results.  Compare Schmidt v. HSC, Inc., 319 P.3d 416, 426 (Haw. 2014) (holding that one-year period commences on date of discovery of the fraudulent nature of the transfer), and Freitag v. McGhie, 947 P.2d 1186 (Wash. 1997) (en banc) (same), with Hill v. Jones, No. 3:03-cv-1034-J-32, 2004 WL 5694988, at *3 (M.D. Fla. Nov. 4, 2004) (Hill I) (holding that one-year period runs from the discovery of the transfer), and Treinish v. Spitaleri, No. 05-94988, 2006 WL 4458357 (Bankr. N.D. Ohio May 9, 2006) (same).   Our review on this question of statutory construction is de novo. McDade v. State, 154 So. 3d 292, 297 (Fla. 2014).

## A.

FUFTA allows a creditor to unwind a transfer of the debtor's property to a third party—and thus to use the property to satisfy its claims against the debtor—when the act deems the transfer "fraudulent" as to creditors.  See generally §§ 726.105-.108. The act identifies three categories of such transfers: (1) transfers made "[w]ith actual intent to hinder, delay, or defraud" creditors, § 726.105(1)(a); (2) certain types of transfers for which the debtor does not receive "reasonably equivalent value" in

- 8 -

exchange for the asset transferred, §§ 726.105(1)(b), .106(1); and (3) transfers to an insider of the debtor for an antecedent debt when the debtor is insolvent and the insider has reasonable cause to know that, § 726.106(2). When a transfer falls into one of these categories, FUFTA affords the creditor an array of remedies against the debtor and the third-party transferree, including the avoidance of the transfer, attachment against the asset transferred, injunctive relief, appointment of a receiver, and in the case of a judgment creditor, execution upon the transferred properties. § 726.109.

Section 726.110 provides fixed times in which claims based on these three categories of fraudulent transfers must be brought or are lost. The statute is titled "Extinguishment of cause of action" and provides as follows:

> A cause of action with respect to a fraudulent transfer or obligation under ss. 726.101-726.112 is extinguished unless action is brought:
>
> (1) Under s. 726.105(1)(a) [actual fraudulent transfers], within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant;
>
> (2) Under s. 726.105(1)(b) or s. 726.106(1) [transfers made without reasonably equivalent value], within 4 years after the transfer was made or the obligation was incurred; or
>
> (3) Under s. 726.106(2) [transfers to insiders for antecedent debt], within 1 year after the transfer was made or the obligation was incurred.

§ 726.110. Causes of action for actual fraudulent transfers are the only actions under FUFTA that have the benefit of a one-year savings clause based on the date "the transfer . . . was or reasonably could have been discovered." § 726.110(1). We conclude that the plain language of that clause requires that the one-year period begin

on the date the transfer was or could reasonably have been discovered, not on the date that the fraudulent nature of the transfer was or could have been discovered.

The interpretation of a statute begins "with the plain meaning of the actual language" the statute employs. Diamond Aircraft Indus., Inc. v. Horowitch, 107 So. 3d 362, 367 (Fla. 2013). When a statute is clear and unambiguous, we must derive its meaning exclusively "from the words used without involving rules of construction or speculating as to what the legislature intended." Kephart v. Hadi, 932 So. 2d 1086, 1091 (Fla. 2006) (quoting Zuckerman v. Alter, 615 So. 2d 661, 663 (Fla. 1993)). It is only when the statutory language is ambiguous—i.e., only when reasonable people could find different meanings in it—that we resort to additional aids to construction. See Blanton v. City of Pinellas Park, 887 So. 2d 1224, 1230 (Fla. 2004) (citing Palm Beach Cty. Canvassing Bd. v. Harris, 772 So. 2d 1273, 1282 (Fla. 2000)).

The savings clause in section 726.110(1) is not ambiguous. The one-year period runs from the date the transfer was discovered or could reasonably have been discovered. As defined by FUFTA, a transfer is the disposition of an asset. See § 726.102(14) (defining a transfer as "every mode . . . of disposing of or parting with an asset"). Section 726.110(1)'s savings clause thus unambiguously ties the beginning of the one-year period to the discovery of the disposition of the asset—in this case, F/R's January 30, 2012, discovery of the assignments of the notes from National Auto Service to National Auto Properties. See Hill I, 2004 WL 5694988, at *3; see also Spitaleri, 2006 WL 4458357, at *2.

Because the statute unambiguously defines the operative event as the discovery of the disposition of the asset, the statute cannot mean that the one-year

- 10 -

period runs from the claimant's discovery of facts showing that the disposition of the asset may have been fraudulent as to creditors. To make the existing statutory term "transfer" carry that meaning, we would in effect have to delete it and replace it with a phrase like "fraudulent nature of the transfer" or "facts constituting the cause of action." It is not within our authority, however, to rewrite an unambiguous statute. See Hayes v. State, 750 So. 2d 1, 4 (Fla. 1999) ("We are not at liberty to add words to statutes that were not placed there by the Legislature."); FINR II, Inc. v. Hardee Cty., 164 So. 3d 1260, 1264 (Fla. 2d DCA 2015) (holding that a court may not "rewrite the statute to insert an additional requirement not placed there by the legislature"). That exercise is instead the responsibility of the legislature, which is best situated to determine what choice most reliably advances the policy goals it hopes to achieve.

## B.

In interpreting the savings clause as running from the discovery of the fraudulent nature of the transfer instead of the transfer itself, the trial court relied, as F/R does on appeal, on the Hawaii Supreme Court's decision in Schmidt and the Washington Supreme Court's decision in Freitag. Those cases interpreted state statutes identical to section 726.110(1). Taken together, they identify two core reasons for holding that the savings clause is triggered by discovery of the fraudulent nature of the transfer: (1) because the introductory clause of section 726.110 refers to "[a] cause of action with respect to a fraudulent transfer," the term "transfer" in subsection (1) must refer to facts showing that the transfer was fraudulent; and (2) because the purpose of the Uniform Act is to prevent fraud and provide a remedy to creditors, the savings clause should be interpreted to begin only when the claimant discovers or should have

- 11 -

discovered that the transfer was in fact fraudulent.  See Schmidt, 319 P.3d at 425-27; Frietag, 947 P.2d at 1189, 1190.  We conclude that neither reason provides a persuasive basis for departing from the statute's plain language.

As to the first rationale, the argument is that because the introductory clause of section 726.110 states that "[a] cause of action with respect to a fraudulent transfer . . . is extinguished unless" timely commenced, the term "transfer" in the savings clause refers to the "fraudulent transfer" described in the introductory clause. For that reason, the logic goes, the term "transfer" in section 726.110(1) must incorporate the facts that made the transfer fraudulent.  See Schmidt, 319 P.3d at 426.

We believe that conclusion does not follow from the stated premise.  To be sure, the term "transfer" in the savings clause relates to the same disposition of an asset identified in the introductory clause as the object of the "cause of action . . . with respect to a fraudulent transfer."  That is so because it is the claimant's discovery of the transfer that is both the object of the one-year savings clause—the thing that is or should be discovered in the exercise of reasonable diligence—and the reason for the claimant's commencement of suit alleging a "cause of action . . . with respect to a fraudulent transfer."  The object of the savings clause, however, remains the term "transfer."  It is a single noun; it is not a noun phrase like "the fraudulent nature of the transfer."  The fact that the introductory clause attaches the adjective "fraudulent" to the noun "transfer" in describing what the claimant seeks to have decided (i.e., the nature of the transfer) cannot reasonably be understood to transmogrify the single term "transfer" into the phrase "fraudulent nature of the transfer."  Expecting the term "transfer" to mean "the fraudulent nature of the transfer" simply requires it to carry more freight than

- 12 -

a reasonable interpretation of the statute can bear. See Tarpon Springs Hosp. Found., Inc. v. Anderson, 34 So. 3d 742, 748 (Fla. 2d DCA 2010) ("Courts are 'without power to construe an unambiguous statute in a way which would extend, modify, or limit[] its express terms or its reasonable and obvious implications.' " (quoting Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984))).

This conclusion is confirmed by the fact that had the legislature intended the one-year period to begin with the discovery of the facts underlying a fraudulent transfer claim, it could have said so.[6] In prescribing periods within which suit must be brought, the legislature has often linked the commencement of that period to the discovery of the facts underlying the cause of action. See, e.g., § 95.031(2)(a), (b), Fla. Stat. (directing that the time periods for bringing actions for fraud and products liability run "from the time the facts giving rise to the cause of action were discovered or should have been discovered"); accord § 95.11(4)(a) (indicating that the time period for action for professional malpractice runs "from the time the cause of action is discovered or should have been discovered with the exercise of due diligence"), (4)(e) (stating that the time period for action for violations of section 517 governing securities and securities fraud runs "from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence"), (4)(f) (setting forth a

---

[6]We note that at least one legislature implementing the Uniform Act has done that. The Arizona analog to section 726.110 explicitly ties the running of the one-year period to the discovery of the fraudulent nature of the transfer instead of the transfer itself. See Ariz. Rev. Stat. Ann. § 44-1009(1) (2015) (providing that a fraudulent transfer action is extinguished unless brought within four years of the transfer or "within one year after the fraudulent nature of the transfer . . . was or . . . could have been discovered by the claimant.").

similar time trigger for action for personal injury caused by phenoxy herbicides while serving in the armed forces).  The fact that the legislature knew how to link the commencement of a time period to the discovery of the facts substantiating a cause of action and elected not to use that language in section 726.110(1) counsels against interpreting the savings clause as running from the discovery of the fraudulent nature of the transfer rather than from the transfer itself.[7]  See Cason v. Fla. Dep't of Mgmt. Servs., 944 So. 2d 306, 315 (Fla. 2006) ("[W]e have pointed to language in other statutes to show that the Legislature 'knows how to' accomplish what it has omitted in the statute in question." (quoting Rollins v. Pizzarelli, 761 So. 2d 294, 298 (Fla. 2000))); Warfel v. Universal Ins. Co. of N. Am., 36 So. 3d 136, 139 (Fla. 2d DCA 2010) (explaining that "the legislature knows how to create burden-shifting presumptions" in holding that a statute failed to do so).

Furthermore, interpreting the term "transfer" in the savings clause to mean "the facts showing that the transfer was fraudulent" would cause that term to mean different things in the same statute.  The presumption is that when the legislature uses the same term multiple times in the same statute, that term carries the same meaning

_____

[7]F/R asserts that the trial court's holding that the one-year savings clause period begins with the discovery of the fraudulent nature of the transfer is supported by the delayed discovery rule, under which the statute of limitations for certain causes of action does not begin to run until the plaintiff knows or in the exercise of due diligence should know of the basis for the claim.  See Butler Univ. v. Bahssin, 892 So. 2d 1087, 1091-92 (Fla. 2d DCA 2004).  As discussed in part III of this opinion, section 726.110(1) is a statute of repose, not a statute of limitations, so the extent to which F/R's assertion is relevant is not clear.  In any event, our supreme court has held that the delayed discovery doctrine is a creature of statute and generally does not apply when a statute does not provide for it.  Davis v. Monahan, 832 So. 2d 708, 710-12 (Fla. 2002).  Section 726.110 does not provide that the one-year period begins with the discovery of the basis of the claim.  It provides that it runs from the discovery of the transfer, an event that occurred in this case beyond the one-year period contemplated by the statute.

- 14 -

each time it is used.  See Rollins, 761 So. 2d at 298 ("[T]he same meaning should be given to the same term within subsections of the same statute." (citing WFTV, Inc. v. Wilken, 675 So. 2d 674, 678 (Fla. 4th DCA 1996))).  Every other time the term "transfer" is used in section 726.110, it unambiguously carries the statutorily defined meaning of the disposition of an asset.  When subsections (1), (2), and (3) say that an action must be brought within four years or one year, as the case may be, of the transfer, they mean within four years or one year of the disposition of the asset.  It would make no sense for these subsections to say that a cause of action is extinguished unless brought within four years or one year of "the fraudulent nature of the transfer" or within one year or four years of the "facts underlying the cause of action."  Although the savings clause is different from the rest of section 726.110 in that it is the only provision of the statute that runs from the discovery of an event, the legislature nonetheless chose to use the same term "transfer" as the trigger.  The same meaning must be accorded to that term throughout the statute.  See id.

As to the second rationale, the argument is that the savings clause should be interpreted favorably to the claimant because the purpose of FUFTA is to deter fraud and provide a remedy to creditors.  This appeal to the legislature's assumed purpose as an aid to statutory construction is irrelevant, however, because the text of section 726.110(1) is unambiguous.  When statutory text is unambiguous, "courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent."  Borden v. East-European Ins. Co., 921 So. 2d 587, 595 (Fla. 2006) (quoting Daniels v. Fla. Dep't of Health, 898 So. 2d 61, 64 (Fla. 2005)).  For that reason, the fact that FUFTA may have a remedial purpose does not empower a

- 15 -

reviewing court to rewrite the unambiguous statutory requirement that the one-year period commence with discovery of the transfer so as to create a different and more claimant-favorable requirement that the legislature did not enact.[8]  See, e.g., Knowles v. Beverly Enters.-Fla., Inc., 898 So. 2d 1, 7 (Fla. 2005) ("Thus, while petitioner is correct [the section at issue] should be liberally construed [as a remedial statute], such construction does not mean that this Court may rewrite the statute or ignore the words chosen by the Legislature so as to expand its terms.").

In Frietag, the court supported its claim about remedial purpose with the observation that both the common law and the statutory predecessor to the Uniform Act—the Uniform Fraudulent Conveyance Act—tied the timeliness of claims founded on fraud to the discovery of the facts constituting the fraud.  947 P.2d at 822.  The presumption, the court reasoned, should be that the Washington legislature was aware of this and must have shared that understanding when it codified the Uniform Act.  The problem is that the understanding that the Frietag court presumed the Washington legislature to have shared varies markedly from the understanding conveyed by the actual words that its legislature—as well as Florida's—voted to adopt.  Regardless of what the understanding at common law or under the Uniform Act's statutory

---

[8]In addition to relying on its perception of FUFTA's general purpose, the trial court reasoned that its holding was supported by section 726.112, which provides, in relevant part, that FUFTA should be "construed to effectuate its general purpose to make uniform the law . . . among states enacting" the Uniform Act.  The trial court did not explain why it believed its holding achieved that purpose.  See Schmidt, 319 P.3d at 428 ("[I]t is evident that . . . 'there is no uniformity in the interpretation of the "extinguishment" provision.' " (quoting Schmidt v. HSC, Inc., Nos. 29454, 29589, 2013 WL 4711524, at *5 (Haw. Ct. App. Aug. 30, 2013))).  Even if the trial court's holding did further uniformity in interpretation of the Uniform Act, however, furtherance of that broad purpose—like the appeal to the remedial purposes of the statute—cannot contravene the unambiguous language the legislature actually adopted.

- 16 -

predecessor was, "discovery of the transfer" means something that is unambiguously different from "discovery of the fraudulent nature of the transfer." Cf. Samples v. Fla. Birth-Related Neurological, 40 So. 3d 18, 22 (Fla. 5th DCA 2010) (declining to apply principle that statutes in derogation of the common law are strictly construed where the statutory language was unambiguous). The language that the legislature enacted is "discovery of the transfer," and it is that understanding we are obliged to follow.

The decision in Schmidt took the remedial-purpose argument a step farther and reasoned that interpreting the savings clause in accord with its plain language is so inconsistent with that purpose that it leads to absurd results and thus justifies departing from the clear text of the savings clause. 319 P.3d at 427; see also Maddox v. State, 923 So. 2d 442, 448 (Fla. 2006) (holding that a "literal interpretation should not be adhered to when it would lead to absurd results"). We cannot agree. The text of section 726.110 in general evinces a purpose to provide a time certain by which both transferors and transferees of property will be free of claims seeking to unwind a transfer and undo their respective expectations with respect to the property. The text of section 726.110(1) in particular balances that purpose of finality against the remedial purposes of FUFTA by providing a creditor whose claim would otherwise be extinguished for not bringing an action within four years with a period of one year from the date the transfer was or reasonably could have been discovered to investigate whether it was made with actual intent to defraud and still have a cause of action upon which it could bring suit. We cannot conclude that this outcome—which is evident from the statutory text—is unwise, let alone so extreme as to render compliance with the plain language of the statute an absurdity. See State v. Hackley, 95 So. 3d 92, 95 (Fla.

- 17 -

2012) ("[T]he absurdity doctrine is not to be used as a freewheeling tool for courts to second-guess and supplant the policy judgments made by the Legislature. It has long been recognized that the absurdity doctrine 'is to be applied to override the literal terms of a statute only under rare and exceptional circumstances.' " (quoting Crooks v. Harrelson, 282 U.S. 55, 60 (1930))).

Because the unambiguous text of section 726.110(1) provides that the one-year period begins on the date the claimant discovers or reasonably could have discovered the transfer that is the subject of its cause of action, F/R's cause of action in this case—which was brought more than one year after it discovered that National Auto Service had assigned its promissory notes to National Auto Properties—was untimely. The trial court's conclusion to the contrary reached beyond the plain language of the statute and, as a result, was in error.

III.

F/R asserts that if we determine that its claim was untimely, as we have, we should remand for the trial court to determine whether the Levin Parties' alleged concealment of the fraudulent nature of the assignments of the notes renders them equitably estopped from asserting the protections of 726.110(1). It relies on In re Hill, 332 B.R. 835, 843 (Bankr. M.D. Fla. 2005) (Hill II), a decision of a federal bankruptcy court that held that section 726.110(1) is a statute of limitations to which equitable doctrines like estoppel apply, as distinguished from a statute of repose to which, the Hill II court assumed, such doctrines do not apply. F/R's argument thus presents two threshold matters: (1) whether section 726.110(1) is a statute of limitations or a statute of repose; and (2) if a statute of repose, whether its application is subject to a claimant's

assertion of equitable estoppel. These are pure questions of law for which our review is de novo. Pino v. Bank of N.Y., 121 So. 3d 23, 30-31 (Fla. 2013). We conclude that section 726.110(1) is a statute of repose that is not subject to an assertion of equitable estoppel as a matter of law, which renders any additional remand for fact-finding on the subject unnecessary.

A.

We turn first to the categorization of section 726.110(1) as either a statute of limitations or a statute of repose. A statute of limitations is, in essence, a limitation on the availability of a remedy; it "set[s] a time limit within which an action must be filed as measured from the accrual of the cause of action, after which time obtaining relief is barred." Hess v. Philip Morris USA, Inc., 175 So. 3d 687, 695 (Fla. 2015) (quoting Merkle v. Robinson, 737 So. 2d 540, 542 n.6 (Fla. 1999)). A statute of repose, in contrast, eliminates the underlying legal right; it "precludes a right of action after a specified time . . . rather than establishing a time period within which the action must be brought measured from the point in time when the cause of action accrued." Univ. of Miami v. Bogorff, 583 So. 2d 1000, 1003 (Fla. 1991); see also Kush v. Lloyd, 616 So. 2d 415, 421 (Fla. 1992) (explaining that a statute of repose "eliminate[s] a cause of action"). Only a statute of repose functions "to extinguish valid causes of action." Nehme v. Smithkline Beecham Clinical Labs., Inc., 863 So. 2d 201, 208 (Fla. 2003); see also Merkle, 737 So. 2d at 542 n.6 (explaining that after the expiration of a repose period, "the cause of action is extinguished"); Carr v. Broward Cty., 505 So. 2d 568, 570 (Fla. 4th DCA 1987) ("At the end of the [repose] period the cause of action ceases to exist.").

Although both statutes of repose and limitations operate to bar suits and claims in relation to specified time periods, they accomplish different purposes in doing so. A statute of limitations serves to require that a plaintiff with a known cause of action prosecute that claim diligently and within a predictable time that will allow for finality of claims prior to the potential loss of available evidence over time. See Statute of limitations, Black's Law Dictionary (10th ed. 2014); see also Allie v. Ionata, 503 So. 2d 1237, 1240 (Fla. 1987) (defining statute of limitations). In contrast, a statute of repose bars a suit after a specified time that is based solely on the actions of the defendant that gave rise to the claim. As a result, the time constraints of a statute of repose are wholly unrelated to when a plaintiff suffers or discovers an actual injury. See Statute of repose, Black's Law Dictionary (10th ed. 2014); see also Universal Eng'g Corp. v. Perez, 451 So. 2d 463, 465 (Fla. 1984) (quoting Bauld v. J.A. Jones Constr. Co., 357 So. 2d 401, 402 (Fla. 1978), to define statutes of repose and distinguish them from statutes of limitations).

Consistent with their function, statutes of repose are understood to set "an outer limit beyond which [claims] may not be instituted." Hess, 175 So. 3d at 695. As such, they are generally regarded as establishing an absolute bar to the filing of any claim after the expiration of the repose period and as being immune to the efforts of claimants to avoid it. See, e.g., May v. Ill. Nat'l Ins. Co., 771 So. 2d 1143, 1156 (Fla. 2000) (describing nonclaim statute in the probate code as a statute of repose and as creating "a self-executing, absolute immunity to claims"); Sabal Chase Homeowners Ass'n v. Walt Disney World Co., 726 So. 2d 796, 798 (Fla. 3d DCA 1999) (holding that statute of repose was not subject to tolling provision applicable to statute of limitations

because, among other reasons, it would "ignore[] fundamental distinctions between ordinary statutes of limitations and statutes of repose").

On its face, section 726.110 is a repose statute, not a limitations statute. The introductory clause of the statute provides that "[a] cause of action with respect to a fraudulent transfer . . . is extinguished unless action is brought" within the time periods provided in subsections (1) through (3). § 726.110 (emphasis added). The unambiguous text thus performs the exact function that distinguishes a statute of repose from a statute of limitations; it extinguishes the cause of action rather than merely barring the remedy. For this reason, a number of courts in other jurisdictions interpreting various state codifications of the Uniform Act have held that the statute is one of repose. See, e.g., MSKP Oak Grove, LLC v. Venuto, No. 10-6465(JBS/JS), 2014 WL 4385979, at *5 (D.N.J. Sept. 5, 2014) ("The use of the term 'extinguished' manifests legislative intent to eliminate a cause of action after a predetermined time period, a distinctive characteristic of a statute of repose."); In re Jamuna Real Estate LLC, 365 B.R. 540, 567 (Bankr. E.D. Pa. 2007) (holding that provision is a statute of repose and noting that "[t]he word 'extinguished' is emphasized because of its substantive effect"); Halpert & Co., Inc. v. Jeffrey Matthews Fin. Grp., LLC, 254 B.R. 104, 123 (Bankr. D.N.J. 1999) (holding that statute was one of repose "because it embodies the most distinctive characteristic of a statute of repose, the barring of the right to bring an action rather than the remedy prescribed"); Carpenter v. Granderson, 214 B.R. 671, 675 (Bankr. D. Mass. 1997) (holding that provision "has the characteristics of a statute of repose"); see also First Sw. Fin. Servs. v. Pulliam, 912 P.2d 828, 830 (N.M. App. 1996) ("[T]he UFTA operates in the same manner as other

statutes of repose that extinguishes a cause of action . . . rather than simply blocking the remedy."); Nathan v. Whittington, 408 S.W.3d 870, 874 (Tex. 2013) (holding that provision is a statute of repose because "[b]y its own terms, the provision does not just procedurally bar an untimely claim, it substantively 'extinguish[es]' the cause of action").[9]

Notwithstanding this statutory text, the bankruptcy court in Hill II held that the one-year savings clause of section 726.110(1) rendered that subsection a statute of limitations. 332 B.R. at 841. In doing so, it relied on our supreme court's recognition that statutes of repose run from a fixed date—such as an incident of malpractice or the sale of a product—while statutes of limitations establish a time period measured from the point when the cause of action accrues. Id. From that premise, the bankruptcy court reasoned that "[i]n providing that an action is extinguished unless brought within one year after the transfer was or could reasonably have been discovered, § 726.110(1) does not cut off the right of action after a specified time measured from the date of the transfer, but establishes a period within which an action shall be brought." Id.; see also Harris Bank, N.A. v. Werner, 386 B.R. 684, 698 (Bankr. N.D. Ill. 2008) (interpreting identical provision of Uniform Act to similar effect).

---

[9]Certain Florida decisions have called section 726.110 a statute of limitations. See, e.g., Desak v. Vanlandingham, 98 So. 3d 710, 711 (Fla. 1st DCA 2012); Paragon Health Servs., Inc. v. Cent. Palm Beach Cmty. Mental Health Ctr., Inc., 859 So. 2d 1233, 1234 (Fla. 4th DCA 2003). In these cases, however, the question whether the statute is properly characterized as one of repose or limitations was neither presented nor decided. The statute was simply described as a limitations statute without discussion. Accordingly, these decisions have no bearing on the proper categorization of the statute in a case where that characterization is in fact at issue.

In our view, Hill II's conclusion that the savings clause creates a statute of limitations incorrectly reads that clause in isolation from the balance of section 726.110(1). See Jones v. ETS of New Orleans, Inc., 793 So. 2d 912, 915 (Fla. 2001) ("Accordingly, 'statutory phrases are not to be read in isolation, but rather within the context of the entire section.' " (quoting Smith v. United States, 508 U.S. 223, 233 (1993))). When the statute is read in its entirety, it is clear that the savings clause does not create a separate, one-year statute of limitations, but rather creates a limited exception to the four-year period of the statute of repose. Section 726.110(1) does not provide that any action based on an alleged actual fraudulent transfer shall be brought within one year, with the time running from the date the transfer was or reasonably could have been discovered, as a statute of limitations would. Rather, the statute uses the language of statutes of repose to provide that a cause of action is "extinguished" if suit is not brought within four years of the date of the transfer unless, if suit should be commenced later, it is commenced within one year of the discovery of the transfer. Instead of establishing a one-year statute of limitations that bars a remedy subject to a four-year repose provision that extinguishes the right, the savings clause carves out and saves a narrow category of causes of action—those upon which suit is brought within one year of the discovery of the transfer—that would otherwise be barred by the four-year period of repose. The statute does not require any actual injury or discovery of an actual injury by the plaintiff, it operates to extinguish a claim based on the defendant's action, the transfer. The savings clause is part of a single statute of repose.

It is significant that the text and structure of section 726.110(1) contrasts markedly with the text of statutory sections in which the legislature has created separate

- 23 -

provisions governing both limitations and repose. For example, the statute applicable to securities violations under chapter 517, contained in section 95.11 titled "Limitations other than for the recovery of real property," provides that all "actions . . . shall be commenced" within two years "with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, but not more than 5 years from the date such violation occurred." § 95.11(4)(e). There, the two-year period is expressed in the language and structure of a statute of limitations (action "shall be commenced" within two years of discovery) and the five-year period is expressed in the language and structure of repose ("but not more than five years"). See, e.g., Puchner v. Bache Halsey Stuart, Inc., 553 So. 2d 216, 218 (Fla. 3d DCA 1989) (holding that the appellant's claim was barred because it was commenced after the time periods prescribed by section 95.11(4)(e)). Other combined limitations/repose statutes are structured similarly. See, e.g., §§ 95.031(2)(a), .11(3)(j) (actions founded on fraud), .11(4)(b) (medical malpractice).

Unlike these statutes, section 726.110(1) does not provide for separate periods of limitations and repose. It extinguishes all causes of action as to which suit is not commenced within four years of the transfer and provides a carve-out for a limited class of claims brought later. Section 726.110(1) is a statute of repose in its entirety.

B.

Having concluded that section 726.110(1) is a statute of repose, we must consider whether it is nonetheless subject to F/R's assertion of equitable estoppel based on its allegation that Mr. Levin concealed the fraudulent nature of the transfer, thereby delaying its commencement of suit. Based on the long-standing recognition

that statutes of repose create an absolute bar to untimely actions and the specific language of section 726.110(1), we hold that it is not subject to an assertion of equitable estoppel.

As its name implies, equitable estoppel embraces the notion that a party should not be permitted to profit by asserting rights against another when that party's own inequitable conduct has lulled the other into action or inaction detrimental to its position. See Fla. Dep't of Health & Rehab. Servs. v. S.A.P., 835 So. 2d 1091, 1096-97 (Fla. 2002) (citing State ex rel. Watson v. Gray, 48 So. 2d 84, 87-88 (Fla. 1950)). The doctrine has been most commonly held to preclude a defendant from raising a statute of limitations defense when the defendant's false representations mislead the plaintiff into failing to file suit within the limitations period. See Major League Baseball v. Morsani, 790 So. 2d 1071, 1076 (Fla. 2001) (holding that equitable estoppel may bar a party's assertion of a statute of limitations); Rinker Materials Corp. v. Palmer First Nat'l Bank & Trust Co. of Sarasota, 361 So. 2d 156, 158 (Fla. 1978) (holding that equitable estoppel requires proof of fraud, misrepresentation, or affirmative deception). Using equitable estoppel in this context assumes a legal shortcoming in the plaintiff's case—the period of limitations—and precludes the defendant from asserting that shortcoming to defeat the plaintiff's claim. Morsani, 790 So. 2d at 1077.

As previously discussed, statutes of repose involve something more significant than a legal defect in a party's case. While a statute of limitations precludes a remedy for the cause of action the plaintiff asserts, see Hess, 175 So. 3d at 695, a statute of repose extinguishes that cause of action altogether, see Bogorff, 583 So. 2d at 1003. Such statutes thus erect an absolute bar to the assertion of the extinguished

cause of action that is analogous to a jurisdictional statute of nonclaim. See May, 771 So. 2d at 1155 (quoting Comerica Bank & Trust, F.S.B. v. SDI Operating Partners, L.P., 673 So. 2d 163, 168 (Fla. 4th DCA 1996)); Musculoskeletal Inst. Chartered v. Parham, 745 So. 2d 946, 953 (Fla. 1999) (holding that a statute of repose sets "absolute parameters of any action"). It would be incongruous with the conception of a statute of repose, which absolutely extinguishes a right of action, to allow the doctrine of equitable estoppel to resurrect that extinguished right.

Although we are aware of no Florida case deciding whether a statute of repose forecloses resort to the doctrine of equitable estoppel as a defense against suit, existing cases suggest this result. In S.A.P., for example, the court held that the state can be equitably estopped from asserting section 768.28(13), Florida Statutes (1993), which sets a period of four years from the accrual of a cause of action to commence suit against it, as a defense to an untimely claim. 835 So. 2d at 1097-98. In reaching that conclusion, the court characterized section 768.28(13) as a "conventional statute of limitations" and distinguished it from "a statute of repose that forecloses all forms of equitable relief." Id. at 1100. The implication of that distinction is that had the statute been one of repose, an equitable doctrine such as estoppel would not have spared the plaintiff's claim. See also May, 771 So. 2d at 1161 (holding that nonclaim statute in probate code is "not subject to waiver or extension in the probate proceedings"); cf. Aristide v. Jackson Mem'l Hosp., 917 So. 2d 253, 255 (Fla. 3d DCA 2005) (holding that equitable doctrine of contra non valentem did not apply to medical malpractice statute of repose providing seven-year time limit even where the cause of action was not discovered due to fraud or concealment).

Moreover, the text of section 726.110(1) does not contemplate that equitable doctrines may supply an exception to the absolute bar of the statute. On the contrary, the statute establishes a four-year period after which a cause of action is extinguished and contemplates only one circumstance in which that bar may be avoided based on an assertion of concealment or delayed discovery, namely when suit is commenced outside the four-year period but within one year of when the transfer was or should have been discovered. That the statute provides this single discovery-based exception and does not provide any others is a textual indication that equitable estoppel principles, which would effectively create a second discovery-based exception when a plaintiff is delayed in learning of the fraudulent nature of the transaction by the defendants' misrepresentation, are not to apply. See State v. Hearns, 961 So. 2d 211, 219 (Fla. 2007) ("Under the canon of statutory construction expressio unius est exclusio alterius, the mention of one thing implies the exclusion of another."). This conclusion is confirmed by the fact that when the legislature wants to extend a time period based on fraud or concealment, it knows how to do so. See, e.g., § 95.11(4)(b) (providing that two- and four-year periods for commencement of medical malpractice suit are extended when "fraud, concealment, or intentional misrepresentation" prevent discovery of the injury). Because statutes of repose are understood by the law to create an absolute bar to an untimely claim and nothing in the text of section 726.110(1) suggests a different result in this case, the statute is not subject to a claimant's assertion of equitable estoppel.

IV.

- 27 -

In sum, the one-year period created by the savings clause in section 726.110(1) begins on the date the transfer is discovered or could reasonably have been discovered, not on the date the fraudulent nature of the transfer was or could reasonably have been discovered. Further, section 726.110(1) is a statute of repose that cannot be avoided by a plaintiff's contention that a defendant is equitably estopped from asserting it as a defense. Because F/R's action was not brought within four years of the assignments of the promissory notes by National Auto Service to National Auto Properties, its claims under FUFTA are barred by section 726.110(1).

For these reasons, we reverse the judgment on appeal. It is clear that no further proceedings are necessary with respect to National Auto Properties and the Levin Parties, and we therefore remand with instructions to enter judgment in their favor. Because National Auto Service is the judgment debtor and transferor, rather than a third party holding a transferred asset, it is not clear from the record or the contentions of the parties whether our disposition precludes further proceedings or relief against it. As to it, we therefore remand for such further proceedings as are consistent with this opinion.

Reversed and remanded with instructions.


LUCAS, J., Concurs.
VILLANTI, C.J., Concurs with opinion.

VILLANTI, Chief Judge, Concurring.

I concur in the majority opinion, including all subparts, but not without some trepidation. In my opinion, there is a real need to balance the remedial purpose of FUFTA, which favors granting a judgment creditor broad relief from fraud, against the judgment debtor's and society's interest in finality. As it stands, the legislature has chosen language, which we are powerless to amend, that limits FUFTA's savings clause to one year from the discovery of the transfer and not from the discovery of the fraud regardless of the reason for the delay in the discovery of the fraud. I can envision circumstances in which the judgment debtor, having already actively engaged in fraud, continues his or her fraudulent ways so as to hide any evidence that a given transfer was, in fact, fraudulent until after the one-year savings period has expired. While that does not appear to be the case here, in my view, the better policy would be to permit the trial court to extend the judgment creditor's collection rights if the creditor could establish an ongoing course of fraud or delay. This would eliminate the statutory encouragement to a judgment debtor engaged in fraud to delay discovery of that fraud until one year after disclosure of the transfer. Thus, while I reluctantly affirm, I urge the legislature to consider broadening FUFTA's savings clause to run from the discovery of the fraud, which in my view is more consistent with its remedial purpose.