MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2019 ME 51
Docket:       Cum-18-292
Argued:       February 4, 2019
Decided:      April 4, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

DANIEL B. TUCCI SR. et al.

MEAD, J.

[¶1]  Daniel B. Tucci Sr., Beatrix T. Tucci, and March 31, LLC (collectively, the Tuccis) appeal from a judgment of the Superior Court (Cumberland County, *L. Walker, J.*) in favor of the State on the State's complaint against the Tuccis for fraudulent transfer pursuant to 14 M.R.S. § 3575(1)(A) (2018).  The Tuccis argue that the State's action is barred by 14 M.R.S. § 3580(1) (2018), pursuant to which a cause of action with respect to a fraudulent transfer is extinguished unless brought within six years after the transfer or, if later, within one year after the transfer was or could reasonably have been discovered.  Although we conclude that section 3580 is a statute of repose that has displaced the common law doctrine of estoppel on which the court relied in rejecting the Tuccis' section 3580(1) defense, we nevertheless affirm the judgment because the

2

court's factual findings apply with equal force to trigger the one-year discovery exception to the six-year limitation provided in section 3580(1).

## I. BACKGROUND

[¶2]  The following facts are drawn from the Superior Court's judgment and are supported by the record.  The Tuccis are longtime residents of property on Monument Street in Portland.  Beginning no later than the year 2000, Daniel Tucci was engaged in business as a sole proprietor doing various handyman and home repair projects.  Tucci was the subject of numerous customer complaints.  For example, in 2008 he was convicted of Class B theft after charging $10,000 to a customer's credit card without her permission.  In 2009, two other customers obtained judgments against him in the amounts of $3,500 and $1,800.

[¶3]  On January 23, 2009, Tucci inherited a one-quarter interest in the Monument Street property, which was valued at approximately $81,000.  On February 24, 2009, Tucci transferred his interest in the property to himself and his wife, as joint tenants, for no consideration.  The release deed was recorded in the Cumberland County Registry of Deeds.  On September 23, 2009, Tucci formed March 31, LLC, of which his wife and the couple's three children were named members—Tucci was not a member.  On November 24, 2009, Tucci and

his wife conveyed their joint one-quarter interest in the property to March 31, LLC, for no consideration. The release deed was also recorded in the Cumberland County Registry of Deeds.

[¶4]  In 2009 and 2010, Tucci claimed on his tax returns that he paid $6,000 in rent and paid no property taxes. Following a stroke in 2010, Tucci began to receive Social Security Disability Income (SSDI) and temporary assistance for needy families (TANF) benefits. At this time, however, Tucci had a substantial amount of cash hidden in his bedroom ceiling that he failed to disclose to the Maine Department of Health and Human Services.

[¶5] Around 2011, after receiving a number of complaints, the Consumer Protection Division of the Attorney General's Office began investigating Tucci's handyman business. The Attorney General issued Tucci a civil investigative demand for documents and testimony. Tucci produced no documents and testified that he was receiving food stamps and SSDI. Based on his receipt of needs-based benefits and his repeated representations of poverty, the Attorney General concluded that Tucci could not pay any civil judgment that might be entered against him but continued to pursue a permanent injunction barring him from conducting business.

4

[¶6]  In February 2012, the State commenced an action against Tucci alleging that he had violated the Unfair Trade Practices Act (UTPA), *see* 5 M.R.S. §§ 205-A to 214 (2018).  Throughout the course of discovery, he never disclosed the existence of March 31, LLC.  At the trial on the UTPA complaint, Tucci again testified to having no assets, and several consumers also testified that Tucci had stated that he had no assets.  In April 2013, the court permanently enjoined Tucci from operating a home repair or handyman business.  He was ordered to pay $236,500.50 in restitution for the benefit of the consumers he had harmed, as well as $140,000 in civil penalties, which were suspended as long as he paid $250 per month toward the restitution.

[¶7]  Although Tucci did not make payments, the State chose not to commence a disclosure hearing during which Tucci would have been required to disclose under oath his income and assets, *see* 14 M.R.S. §§ 3122-3125 (2018); neither did the State search registries of deeds to determine whether Tucci owned any real property.

[¶8]  The Superior Court found that "based on the various representations Tucci made to the [Attorney General], his tax returns, and testimony of consumers at the UTPA trial, [the Attorney General] believed Tucci had no significant assets and was a tenant in an apartment at [the] Monument

Street [property]." On March 29, 2016, the Attorney General's office received a tip that Tucci may have an ownership interest in the property and that the property was listed for sale for $2.5 million. The Attorney General then undertook a title search and discovered the 2009 transfers to Tucci and his wife and to March 31, LLC.

[¶9] Within days of that discovery, on April 8, 2016, the State brought a complaint for fraudulent transfer pursuant to the Uniform Fraudulent Transfer Act (UFTA), 14 M.R.S. §§ 3571-3582 (2018) against the Tuccis. A bench trial was held on February 12 and 13, 2018. Thereafter the parties submitted extensive proposed findings of fact and conclusions of law. After considering the evidence introduced at trial and the parties' proposed findings, the Superior Court entered a judgment and order in the State's favor. The court determined that the Tuccis were equitably estopped from asserting the bar set out in section 3580(1) as an affirmative defense and that the State had shown by clear and convincing evidence that Tucci transferred his property with actual intent to hinder, delay, or defraud creditors in violation of 14 M.R.S. § 3575(1)(A).[1] The Tuccis appeal.

---

[1] The Tuccis timely filed a motion for amended or additional findings, amended or additional conclusions of law, and an amended judgment, which the court granted in part. The court made no substantive changes to the judgment but amended the judgment to insert clarifying language with respect to remedies.

## II. DISCUSSION

[¶10]   The Tuccis argue that the State's fraudulent transfer claim is barred by the time limitations established by section 3580.  Pursuant to that statute, "[a] cause of action with respect to a fraudulent transfer or obligation under [the UFTA] is extinguished unless action is brought . . . [u]nder section 3575[(1)(A)] within 6 years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant."   In response, the State asserts that (1) section 3580(1) does not apply to the State because the statute does not specifically name the State, (2) even if the statute applies to the State, the Tuccis are equitably estopped from raising section 3580(1) as an affirmative defense, and (3) even if the statute applies to the State and the Tuccis are not estopped from raising the defense, the Tuccis did not prove their section 3580(1) defense by a preponderance of the evidence.  Each of the State's arguments will be discussed in turn.

A.    Applicability of Section 3580 to the State

[¶11]   The State asserts that it is not bound by any statute unless it is expressly named in it.  *See State v. Crommett*, 151 Me. 188, 193, 116 A.2d 614, 616 (1955) ("It is a general rule in Maine that the State is not bound by a statute

unless expressly named therein.").  The plain language of section 3580(1) does not explicitly name the State; it uses only the term "claimant."  "Claimant" is not defined by the UFTA, but, pursuant to section 3572, a creditor "means a person who has a claim" and a person "means an individual, partnership, corporation, association, organization, *government or governmental subdivision or agency*, business trust, estate, trust or any other legal or commercial entity."  14 M.R.S. § 3572(4), (9) (emphasis added).

[¶12]  Because the State, by definition, is a "person" with a claim under the statute, the Tuccis' contention that section 3580(1) is broad enough to apply to the State is not without merit.  However, we need not resolve the issue because we hold that section 3580 is a statute of repose.[2]  "A statute of repose is a statute barring any suit that is brought after a specified time since the defendant acted . . . ."  *Baker v. Farrand*, 2011 ME 91, ¶ 16 n.4, 26 A.3d 806 (quotation marks omitted).  It "effect[s] a legislative judgment that a defendant should be free from liability after the legislatively determined period of time."

---

[2]  Statutes of limitations and statutes of repose are both mechanisms used to limit the temporal duration of liability, but each has a distinct purpose. *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. __, 137 S. Ct. 2042, 2049 (2017).  A statute of limitations governs the time within which an action must be commenced and begins to run when the cause of action accrues, whereas a statute of repose limits the time within which an action may be brought and is not related to the accrual of any cause of action. *See id.*

8

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. \_\_, 137 S. Ct. 2042, 2049 (2017) (quotation marks omitted).

[¶13]   That section 3580 is a statute of repose is confirmed by the language of the statute, which "reflects the legislative objective to give a defendant a complete defense to any suit after a certain period." *Id.*; *see also CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014); *Nat'l Auto Serv. Ctrs. v. F/R 550, LLC*, 192 So. 3d 498, 510 (Fla. Dist. Ct. App. 2016).   In particular, the term "extinguished" used in section 3580 sets an outer limit on the right to bring an action, rather than merely barring the remedy.   *See Nat'l Auto Serv. Ctrs.*, 192 So. 3d at 510.   Furthermore, the UFTA's official comments specifically express the statutory intent to bar the underlying right and not merely the remedy upon expiration of the statutory periods prescribed.   Unif. Fraudulent Transfer Act Prefatory Note, 7A Pt. II U.L.A. 249 (2017).

[¶14]  Accordingly, because section 3580 affects a claimant's substantive right to bring a fraudulent transfer action, it is applicable to all parties who seek relief under the statute.   *See* Unif. Fraudulent Transfer Act § 9 cmt. 1, 7A Pt. II U.L.A. 555 (2017) (stating that the statute rejects the rule applied in *United States v. Gleneagles Inv. Co.*, 565 F. Supp. 556, 583 (M.D. Pa. 1983), that a state statute of limitations did not to apply to a fraudulent conveyance action

by the United States government). Thus, unlike a traditional statute of limitations that would not apply against the State unless the State was expressly named therein, *see Crommett*, 151 Me. at 193, 116 A.2d at 616, after the passage of the prescribed time period in the statute of repose, there exists no right for *any* claimant—even the State—to bring an action unless an exception is demonstrated.

B. Equitable Estoppel

[¶15] Having concluded that section 3580 is a statute of repose, we next consider the State's contention that the Tuccis are estopped from asserting it. We hold that section 3580 displaces our general power to apply equitable doctrines to prevent a defendant from asserting a statute of repose as a defense. *Cf. Baker*, 2011 ME 91, ¶ 21 n.5, 26 A.3d 806 ("Through statutory enactment, the Legislature has foreclosed our capacity to define when the statute of limitations . . . may be tolled . . . or to establish instances where the discovery rule may be applied.").

[¶16] The United States Supreme Court has held that, although time requirements are customarily subject to equitable doctrines such as tolling, such doctrines are fundamentally inconsistent with a statute structured as a one-year discovery period with a period of repose. *Lampf, Pleva, Lipkind, Prupis*

*& Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991). Similarly, as we discuss below, section 3580(1)'s one-year discovery period begins after the claimant's actual or constructive discovery of the fraudulent transfer, making equitable tolling or estoppel unnecessary, and the six-year extinguishment period is a cutoff to which equitable principles do not logically apply. *See id.* "[T]he object of a statute of repose, to grant complete peace to defendants, supersedes the application of a tolling rule based in equity." *Cal. Pub. Emps.' Ret. Sys.*, 137 S. Ct. at 2052; *see also CTS Corp.*, 573 U.S. at 9 (noting that repose periods are fixed and will not be delayed by estoppel or tolling); *Aresty Int'l Law Firm, P.C. v. Citibank, N.A.*, 677 F.3d 54, 58 n.6 (1st Cir. 2012) (same). Thus, "[b]ased on the long-standing recognition that statutes of repose create an absolute bar to untimely actions and the specific language of [the UFTA statute], . . . [a UFTA action] is not subject to an assertion of equitable estoppel." *Nat'l Auto Serv. Ctrs.*, 192 So. 3d at 512.

[¶17]   Accordingly, although principles of law and equity may supplement the provisions of the UFTA unless displaced by the provisions of the UFTA, *see* 14 M.R.S. § 3581, the State may not assert estoppel here because section 3580 has displaced the applicability of equitable doctrines that might otherwise bear on that statute. This conclusion is further reinforced by Maine

Comment 3 to section 3580 of the UFTA, which states that "[t]he six year statute of limitations from date of discovery in cases of fraudulent concealment provided by 14 M.R.S.A. § 859 is not available for actions under the Act. The more limited discovery rule provided in subsection (1) is the *only* exception to the general six-year limitation period provided by this section." 14 M.R.S.A. § 3580 Maine cmt. 3 (emphasis added). "That the statute provides this single discovery-based exception and does not provide any others is a textual indication that equitable estoppel principles, which would effectively create a second discovery-based exception when a plaintiff is delayed in learning of the fraudulent nature of the transaction by the defendants' misrepresentation, are not to apply." *Nat'l Auto Serv. Ctrs.*, 192 So. 3d at 513; *see also United States v. Brockamp*, 519 U.S. 347, 350-52 (1997) (explaining that when time limitations and exceptions are explicit, the statute cannot easily be read as containing implicit exceptions); *Musk v. Nelson*, 647 A.2d 1198, 1201-02 (Me. 1994) ("[A] well-settled rule of statutory interpretation states that express mention of one concept implies the exclusion of others not listed. . . . The statute provides a single exception and implicitly denies the availability of any other.").

12

## C.   Discovery Exception

[¶18]  Because the State may not assert equitable estoppel in this case, we next consider the Tuccis' contention that section 3580(1) bars the State's claim.  The State concedes that it did not bring its action within six years after the transfers were made; however, the State argues that the Tuccis cannot show that the State failed to bring its claim within one year after it discovered or reasonably could have discovered the transfers.  *See* 14 M.R.S. § 3580(1). Although the State brought its complaint on April 8, 2016, ten days after discovering the transfers, the Tuccis argue that the State could have discovered the transfers as early as 2011 during the UTPA proceedings and that it should have performed an online check of the Cumberland County Registry of Deeds, which would have revealed the transfers in 2009.[3]

[¶19]  We have interpreted a similar discovery rule, found in 14 M.R.S. § 859 (2018), "as a provision that prevents commencement of the limitations period until the existence of the cause of action or fraud is discovered or should have been discovered by the plaintiff in the exercise of due diligence and

---

[3] We decline to address the Tuccis' argument that under the laws of agency, because Cumberland County had actual knowledge of the transfers when they were recorded in 2009, the State is likewise charged with knowledge.  *See Brown v. Town of Starks*, 2015 ME 47, ¶ 6, 114 A.3d 1003 ("In order to preserve an issue for appellate review, a party must timely present that issue to the original tribunal; otherwise, the issue is deemed waived.").

ordinary prudence." *Drilling & Blasting Rock Specialists, Inc. v. Rheaume*, 2016 ME 131, ¶ 19, 147 A.3d 824 (quotation marks omitted). In that context, we reasoned that "a failure to conduct a title search at the registry will not, as a matter of law, constitute a failure to exercise due diligence for purposes of preventing the commencement of the limitations period on a fraud claim. Whether a plaintiff exercised due diligence depends on the factual circumstances of a given case . . . ." *Id.* ¶ 29. Recordation of the fraudulent conveyance is merely one circumstance for the court to consider. *See Westman v. Armitage*, 215 A.2d 919, 922 (Me. 1966).

[¶20] As with section 859, for purposes of commencing the statutory period pursuant to section 3580(1), the claimant must exercise due diligence. *Accord Davimos v. Hallé*, No. 1:13-cv-225-GZS, 2013 U.S. Dist. LEXIS 136221, at *11 (D. Me. Sept. 24, 2013) (finding our decisions interpreting section 859 instructive in assessing whether a plaintiff could have discovered a fraudulent transfer pursuant to section 3580(1)). Although section 3580(1) uses the term "could," whereas section 859 looks to when the fraud "should have been discovered," *Rheaume*, 2016 ME 131, ¶ 19, 147 A.3d 824 (quotation marks omitted), the rational meaning of section 3580(1) is that the actions taken by the defrauded claimant to discover the fraud must be reasonable in the

14

particular circumstances of the case.[4]  *See, e.g.*, *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 195 (5th Cir. 2013) (applying the Texas Uniform Fraudulent Transfer Act, which in pertinent part is identical to Maine's, and using the terms "could" and "should" interchangeably).

[¶21] In this case, the Superior Court made extensive findings of fact detailing the many deceptive and misleading actions that Tucci undertook to present the appearance of insolvency.  The court found, for purposes of the equitable estoppel defense to the section 3580(1) six-year limitation, that the State's failure to conduct a search at the registry of deeds or pursue a disclosure hearing was reasonable in light of Tucci's misrepresentations.  Those findings, which are supported by the record, apply with equal force to the State's duty of due diligence pursuant to the one-year discovery rule of section 3580(1).  Accordingly, because the State's complaint was filed within the one-year period following the discovery of Tucci's fraud, and the State could not have reasonably discovered the fraud before the actual discovery, the State's cause of action was not extinguished by section 3580(1).

---

[4] Were it otherwise, the claimant could benefit from the discovery rule only by engaging in every readily available means to try to learn of the fraud, regardless of whether it is reasonable under the circumstances.  We doubt the Legislature intended to impose such a burden on a defrauded party, and thus we apply section 3580(1) in the more sensible way that will require the claimant to act reasonably based on the particular circumstances of the case actually or constructively known to the claimant at the time.

[¶22]  With respect to the merits of the State's claim, the Superior Court appropriately considered the factors laid out in section 3575(2) of the UFTA and determined that the State had established, by clear and convincing evidence, that Tucci's transfers were made with actual intent to hinder, delay, or defraud creditors.  *See* 14. M.R.S. § 3575(1)(A); *FDIC v. Proia*, 663 A.2d 1252, 1254 (Me. 1995).  Because the court's findings are supported by competent evidence in the record, we affirm the judgment.

The entry is:

Judgment affirmed.

---

Lawrence C. Winger, Esq. (orally), Portland, for appellants Daniel B. Tucci, Sr., Beatrix T. Tucci, and March 21, LLC

Janet T. Mills, Attorney General, and Thomas A. Knowlton, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Cumberland County Superior Court docket number CV-2016-154
FOR CLERK REFERENCE ONLY